## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| HOTELS UNION SQUARE MEZZ 1 LLC and | : Case No. 10-10971 (KJC) |
| HOTELS UNION SQUARE MEZZ 2 LLC, | : (Jointly Administered) |
| | : |
| Debtors. | : |
| | : |

### DISCLOSURE STATEMENT FOR THE JOINT PLAN OF LIQUIDATION OF HOTELS UNION SQUARE MEZZ 1 LLC AND HOTELS UNION SQUARE MEZZ 2 LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

POTTER ANDERSON & CORROON LLP
Steven M. Yoder, Esq.
Jeremy W. Ryan, Esq.
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
Phone: (302) 984-6000
Facsimile: (302) 658-1192

*Counsel for Hotels Union Square Mezz 1 LLC, et al.*

Dated: July 14, 2010
Wilmington, Delaware

> THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED THE MAILING OF THE DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL, BUT HAS NOT YET BEEN APPROVED. INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS SUBJECT TO COMPLETION AND AMENDMENT.

**DISCLAIMER**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE APPENDICES HERETO RELATE TO THE DEBTORS' PLAN OF LIQUIDATION. THE INFORMATION IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND OTHER EXHIBITS ANNEXED OR REFERRED TO IN THE PLAN AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER LAWS GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR PROVISIONAL APPROVAL AND THEN THE DEBTORS WILL SEEK FINAL APPROVAL FROM THE BANKRUPTCY COURT OF THE ADEQUACY OF THE DISCLOSURE STATEMENT AT A PROPOSED COMBINED FINAL DISCLOSURE STATEMENT AND PLAN CONFIRMATION HEARING.

THIS DISCLOSURE STATEMENT CONTAINS FORWARD-LOOKING STATEMENTS BASED PRIMARILY ON THE CURRENT EXPECTATIONS OF THE DEBTORS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AFFECTING THE FINANCIAL CONDITION OF THE DEBTORS' BUSINESSES. THE WORDS "BELIEVE," "MAY," "ESTIMATE," "CONTINUE," "ANTICIPATE," "INTEND," "EXPECT" AND SIMILAR EXPRESSIONS IDENTIFY THESE FORWARD-LOOKING STATEMENTS. THESE FORWARD-LOOKING STATEMENTS ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS, INCLUDING THOSE DESCRIBED BELOW IN SECTION X. IN LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD-LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS DISCLOSURE STATEMENT MAY NOT OCCUR, AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. THE DEBTORS DO NOT UNDERTAKE ANY OBLIGATION TO UPDATE OR REVISE PUBLICLY ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS OR OTHERWISE.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), ANY STATE

SECURITIES COMMISSION OR ANY SECURITIES EXCHANGE OR ASSOCIATION NOR HAS THE SEC, ANY STATE SECURITIES COMMISSION OR ANY SECURITIES EXCHANGE OR ASSOCIATION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, AND PROPOSED SETTLEMENTS PURSUANT TO THE PLAN, NONE OF THE PLAN, THIS DISCLOSURE STATEMENT, THE APPENDICES HERETO, OR ANY EVIDENCE OR ARGUMENT PRESENTED IN SUPPORT HEREOF OR THEREOF WILL CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER. THIS DISCLOSURE STATEMENT WILL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR WILL IT BE CONSTRUED TO BE LEGAL ADVICE ON THE TAX, SECURITIES OR OTHER EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN HOTELS UNION SQUARE MEZZ 1 LLC OR HOTELS UNION SQUARE MEZZ 2 LLC.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN DOCUMENTS RELATED TO THE PLAN AND CERTAIN EVENTS IN THE CHAPTER 11 CASES. THE DEBTORS' MANAGEMENT HAS REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THE DISCLOSURE STATEMENT. ALTHOUGH THE DEBTORS HAVE USED THEIR REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS FINANCIAL INFORMATION, THE DEBTORS DO NOT WARRANT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY INACCURACY OR OMISSION, AND SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS.

---

**PARTIES SHOULD CONSULT WITH THEIR OWN COUNSEL, ACCOUNTANTS, AND/OR TAX ADVISERS WITH RESPECT TO THE LEGAL EFFECTS AND OTHER CONSEQUENCES OF THE PLAN.**

---

* * * * *

## DEFINED TERMS

CAPITALIZED TERMS USED BUT NOT OTHERWISE DEFINED IN THIS DISCLOSURE STATEMENT HAVE THE MEANINGS ASCRIBED TO SUCH TERMS IN THE PLAN. THE TERMS DEFINED IN THE PLAN ARE USED IN THE DISCLOSURE STATEMENT AND/OR THE PLAN. PLEASE REFER TO THE PLAN FOR DEFINITIONS OF THE CAPITALIZED TERMS USED BUT NOT OTHERWISE DEFINED HEREIN.

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................................... 1
    A.  Voting Deadline; Summary of Voting Procedures ............................................................ 1
    B.  Overview of the Debtors' Plan ......................................................................................... 1
    C.  Treatment of Claims and Equity Interests Under the Plan ............................................... 2
    D.  Hearing on Disclosure Statement and Plan; Recommendation ........................................ 4

II.  GENERAL OVERVIEW OF THE DEBTORS ................................................................... 5
    A.  Acquisition of the Hotel ................................................................................................... 5
    B.  The Debtors' Corporate Structure .................................................................................... 5
    C.  Events Leading to Chapter 11 Bankruptcy ...................................................................... 8

III.  OVERVIEW OF CHAPTER 11 ......................................................................................... 8

IV.  EVENTS DURING THE CHAPTER 11 CASES ................................................................ 9
    A.  Retention of the Debtors' Professionals ........................................................................... 9
    B.  Joint Administration ........................................................................................................ 9
    C.  Filing of Schedules and Statements of Financial Affairs ................................................ 9
    D.  Bar Date ........................................................................................................................... 9
    E.  Motions by DekaBank and USRHC .................................................................................. 9
    F.  Adversary Proceedings ................................................................................................... 10
    G.  Meeting of Creditors ...................................................................................................... 10

V.  OVERVIEW OF THE PLAN ............................................................................................. 10

VI.  PROVISIONS OF THE PLAN ........................................................................................... 11
    A.  Administrative Expense and Priority Claims ................................................................. 11
    B.  Treatment of Claims and Equity Interests ..................................................................... 12
    C.  Means for Implementation ............................................................................................. 15
    D.  Distributions .................................................................................................................. 17
    E.  Procedures for Resolving Disputed, Contingent, and Unliquidated Claims .................. 19
    F.  Executory Contracts and Unexpired Leases ................................................................... 20
    G.  Conditions Precedent ..................................................................................................... 21
    H.  Effect of Confirmation ................................................................................................... 22
    I.  Retention of Jurisdiction ................................................................................................ 27
    J.  Miscellaneous Provisions ............................................................................................... 29

VII.  CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ........... 30
    A.  United States Federal Income Tax Consequences to the Debtors ................................... 31
    B.  United States Federal Income Tax Consequences to Holders of Claims and Equity Interests ......... 32

VIII.  FEASIBILITY OF THE PLAN, ACCEPTANCE OF THE PLAN AND THE BEST INTERESTS
    TEST ................................................................................................................................... 32

| | A. | Feasibility of the Plan | 32 |
|---|---|---|---|
| | B. | Acceptance of the Plan | 32 |
| | C. | Best Interests Test/Liquidation Analysis | 32 |
| IX. | | ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN | 33 |
| | A. | Liquidation under Chapter 7 | 33 |
| | B. | Alternative Chapter 11 Plan(s) | 34 |
| X. | | CERTAIN FACTORS TO BE CONSIDERED; PLAN RELATED RISK FACTORS | 34 |
| | A. | Bankruptcy Proceedings and Debtors' Circumstances | 34 |
| | B. | Failure to Confirm the Plan | 34 |
| | C. | Failure to Consummate the Plan; Risk of Non-Occurrence of the Effective Date | 35 |
| XI. | | THE SOLICITATION; VOTING PROCEDURES | 35 |
| | A. | Solicitation | 35 |
| | B. | Voting Deadline | 36 |
| | C. | Voting Procedures | 36 |
| | D. | Miscellaneous | 36 |
| | E. | Parties Entitled to Vote | 37 |
| | F. | Waivers of Defects, Irregularities, Etc. | 37 |
| | G. | Withdrawal of Ballots; Revocation | 38 |
| | H. | Further Information, Additional Copies | 38 |
| | I. | Voting Tabulation | 38 |
| XII. | | CONFIRMATION PROCEDURES | 39 |
| XIII. | | RECOMMENDATION AND CONCLUSION | 40 |

## TABLE OF ATTACHMENTS

EXHIBIT A            The Plan

[THIS PAGE INTENTIONALLY LEFT BLANK]

I. INTRODUCTION

On March 23, 2010 (the "Mezz 1 Petition Date") and March 25, 2010 (the "Mezz 2 Petition Date"), Hotels Union Square Mezz 1 LLC (Case No. 10-10971) and Hotels Union Square Mezz 2 LLC (Case No. 10-11001) (collectively, the "Debtors"), respectively, commenced chapter 11 bankruptcy cases (the "Chapter 11 Cases") by filing voluntary petitions under chapter 11 of the Bankruptcy Code. Since the Petition Dates, each of the Debtors has continued to operate as a debtor-in-possession subject to the supervision of the Bankruptcy Court in accordance with the Bankruptcy Code.

The Debtors submit this disclosure statement (the "Disclosure Statement") pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), in connection with the solicitation of votes on the Joint Plan of Liquidation of Hotels Union Square Mezz 1 LLC and Hotels Union Square Mezz 2 LLC (the "Plan"). A copy of the Plan is attached hereto as Exhibit A hereto. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

The purpose of this Disclosure Statement is to provide sufficient information to enable creditors who are entitled to vote to make an informed decision on whether to accept or reject the Plan. This Disclosure Statement describes the sale and transfer by the Debtors of the membership interest in the Hotel Owner to Venture LLC, describes how creditors will be treated under the Plan, and sets forth certain detailed information about the Debtors' history. The Disclosure Statement also describes the voting procedures, the terms of the Plan, alternatives to the Plan, the effects of confirmation of the Plan, and the manner in which distributions will be made. The summaries of the Plan and other documents related to the restructuring are qualified in their entirety by the Plan and its related exhibits.

**THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF THE STRUCTURE OF, CLASSIFICATION AND TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS UNDER, AND IMPLEMENTATION OF, THE PLAN. IT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN THAT ACCOMPANIES THIS DISCLOSURE STATEMENT AND TO THE EXHIBITS ATTACHED THERETO OR REFERRED TO THEREIN. THE TERMS OF THE PLAN AND OTHER DOCUMENTS RELATING TO THE TRANSACTIONS CONTEMPLATED BY THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT.**

A.    Voting Deadline; Summary of Voting Procedures

The Voting Deadline to accept or reject the Plan is **5:00 p.m. Prevailing Eastern Time on August ___, 2010**, unless extended by The Debtors. Except to the extent requested by the Debtors or as permitted by the Bankruptcy Court pursuant to Rule 3018 of the Bankruptcy Rules, Ballots received after the Voting Deadline will not be counted or otherwise used in connection with the Debtors' request for confirmation of the Plan (or any permitted modification thereof). The Debtors expressly reserve the right to extend the Voting Deadline, until the necessary Ballots have been received. For a more detailed discussion of the solicitation and voting procedures, see Section XI - "THE SOLICITATION; VOTING PROCEDURES" below.

B.    Overview of the Debtors' Plan

The following is a brief overview of the material provisions of the Debtors' Plan and is qualified in its entirety by reference to the full text of the Plan.

On July 14, 2010, the Debtors filed the Plan with the Bankruptcy Court to facilitate the liquidation of the Debtors' Estates, the sale and transfer of the equity interests in the Hotel Owner held by

the Mezz 1 Debtor to Venture LLC, and interrelated settlements, releases and compromises of various disputes and litigation. The Plan represents the culmination of extensive negotiations by and between the Debtors, LEM, USRHC, DekaBank and Host, and incorporates the terms of the comprehensive Settlement Agreement reached among the parties.

The Plan provides for the resolution of Claims and Equity Interests against the Debtors as set forth in the Plan and the Settlement Agreement and related documents. In essence, such documents and agreements provide that (i) pursuant to the terms of the Settlement Agreement, which shall be filed with the Bankruptcy Court under seal, the Mezz 1 Debtor shall sell and transfer the Hotel Equity to Venture LLC; (ii) Venture LLC shall acquire the Hotel Equity pursuant to the Sale; (iii) LEM shall receive a cash payment at the Sale and its nominee shall receive the Installment Note; and (iv) the consideration received by the Mezz 1 Debtor from the sale of the Hotel Equity, together with any funds required from LEM under the LEM Funding Obligations, shall be used to satisfy the payments and distributions to be made pursuant to the Plan.

The Plan constitutes a joint chapter 11 plan of liquidation for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for the other Debtor, such that the failure to obtain confirmation of the Plan by one of the Debtors will result in a failure to confirm the Plan with respect to the other Debtor. In this regard, the Plan seeks to consolidate the Debtors' Estates for procedural purposes only and, for the avoidance of doubt, does not seek to substantively consolidate the Debtors' Estates.

C.      Treatment of Claims and Equity Interests Under the Plan

Except for Administrative Expense Claims and Priority Tax Claims, which are not required to be classified, all Claims and Equity Interests with respect to each Debtor are placed in Classes for such Debtor. While the Debtors do not believe there are any valid Priority Tax Claims, Other Secured Claims or General Unsecured Claims against the Debtors, out of an abundance of caution, the Plan provides for the treatment of such Claims. In that regard, to the extent that it is determined that there are creditors who hold such valid Administrative Expense Claims, Priority Tax Claims, Other Secured Claims or General Unsecured Claims against the Debtors, LEM has agreed to pay such Claims pursuant to the LEM Funding Obligations. The following table briefly summarizes the classification and treatment of Claims and Equity Interests with respect to each Debtor under the Plan.

| Description and Amount of Claims or Interests | Treatment Under the Plan |
|---|---|
| **Class 1 - DekaBank Claim**: Consists of all Claims against the Mezz 1 Debtor arising under the Mezz 1 Loan and the Mezz 1 Loan Documents. | *Impaired.* The Dekabank Claim shall be allowed in the amount of the proof of claim filed by DekaBank. On the Effective Date, in full satisfaction, settlement, release, and discharge of, and in exchange for such Class 1 Claim, based on the agreements and the Settlement Agreement implemented in connection with the Plan, including the release of the Mezz 1 Collateral, the holder of the Class 1 Claim shall receive (i) Cash in the amount of $61 million (which is the same amount in the purchase contract for its UCC sale if that had been held), (ii) Cash in the amount of the Protective Advances made, by the holder of the Class 1 Claim after March 24, 2010, if any, and (iii) the releases and indemnities under the Plan, the Settlement Agreement and related documents. |

2

| | |
|---|---|
| **Class 2 – Other Secured Claims against the Mezz 1 Debtor**: Consists of any Claim against the Mezz 1 Debtor, the amount of which (i) has been determined by a Final Order to be secured pursuant to section 506(a) and, if applicable, section 1111 of the Bankruptcy Code or (ii) in the absence of such Final Order, has been agreed by the Debtors to be secured (as set forth in the Plan or otherwise), other than the DekaBank Claim and the USRHC Claim. | *Unimpaired.* Each holder of a valid Other Secured Claim against the Mezz 1 Debtor shall receive, in full satisfaction, settlement, release and discharge of and in exchange for, such Other Secured Claim, (i) Cash equal to the value of its Other Secured Claim or (ii) such other less favorable treatment to which LEM and such holder shall have agreed upon in writing. Notwithstanding the foregoing, any Claim arising as a result of a tax lien that would otherwise be an Other Secured Claim shall be paid in accordance with Section 2.3 of the Plan. |
| **Class 3 – General Unsecured Claims against the Mezz 1 Debtor**: Consists of any Claim against the Mezz 1 Debtor other than the DekaBank Claim, any Other Secured Claim, or a claim entitled to priority under section 507 of the Bankruptcy Code, including any claims based on rejection of contracts, litigation claimants to the extent not covered by insurance and other general unsecured claimants. | *Unimpaired.* In full satisfaction, settlement, release, and discharge of, and in exchange for such Class 3 Claim, each holder of a valid Class 3 Claim shall be paid in full in Cash on the unpaid portion of such General Unsecured Claim on the latest of (i) the Effective Date (or as soon thereafter as reasonably practicable), (ii) the date on which such Claim would be paid in the ordinary course of business, or (iii) as otherwise agreed to by LEM and the holder of such Claim. |
| **Class 4 – Equity Interests in Mezz 1 Debtor**: Consists of the legal, equitable, contractual and other rights of any Person with respect to the membership interests, common stock or any other equity securities of, or ownership interests in, the Mezz 1 Debtor. | *Impaired.* On the Effective Date, based on the agreements and the Settlement Agreement implemented in connection with the Plan, the holder of Equity Interests in Class 4 shall receive the consideration set forth in Sections 4.2(a) and 4.2(d) of the Plan, which shall be directly distributed to such holders as set forth below. The Equity Interests in Mezz 1 Debtor shall be cancelled as of the Effective Date. |
| **Class A – USRHC Claim**: Consists of all Claims against the Mezz 2 Debtor arising under the Mezz 2 Loan and the Mezz 2 Loan Documents. | *Impaired.* The USRHC Claim shall be allowed in the amount of $37,000,000. On the Effective Date, in full satisfaction, settlement, release, and discharge of, and in exchange for such Class A Claim, based on the agreements and the Settlement Agreement implemented in connection with the Plan, including, but not limited to, the agreement of the holder of the Class A Claim to release the Mezz 2 Collateral, the holder of the Class A Claim or its nominee shall receive (i) the right to purchase an interest in Venture LLC as set forth in the Settlement Agreement, (ii) the Debtors' agreement as part of the settlement under the Plan and the Settlement Agreement to release all claims challenging that USRHC is the rightful present holder of the Mezz 2 Loan, and (iii) the releases and indemnities under the Plan, the Settlement Agreement and related documents. The Schedules of the Mezz 2 Debtor shall be deemed to be amended as of the Effective Date to replace Sandelman Partners CRE CDO I, Ltd. with USRHC on Schedule D thereof. |

3

| | |
|---|---|
| **Class B - Other Secured Claims against the Mezz 2 Debtor**: Consists of any Claim against the Mezz 2 Debtor, the amount of which (i) has been determined by a Final Order to be secured pursuant to section 506(a) and, if applicable, section 1111 of the Bankruptcy Code or (ii) in the absence of such Final Order, has been agreed by the Debtors to be secured (as set forth in the Plan or otherwise), other than the DekaBank Claim and the USRHC Claim. | *Unimpaired.* Each holder of a valid Other Secured Claim against the Mezz 2 Debtor shall receive, in full satisfaction, settlement, release and discharge of and in exchange for, such Other Secured Claim, (i) Cash equal to the value of its Other Secured Claim or (ii) such other less favorable treatment to which LEM and such holder shall have agreed upon in writing. Notwithstanding the foregoing, any Claim arising as a result of a tax lien that would otherwise be an Other Secured Claim shall be paid in accordance with Section 2.3 of the Plan. |
| **Class C - General Unsecured Claims against the Mezz 2 Debtor**: Consists of any Claim against the Mezz 2 Debtor other than the USRHC Claim, any Other Secured Claim, or a claim entitled to priority under section 507 of the Bankruptcy Code, including any claims based on rejection of contracts, litigation claimants to the extent not covered by insurance and other general unsecured claimants. | *Unimpaired.* In full satisfaction, settlement, release, and discharge of, and in exchange for such Class C Claim, each holder of a valid Class C Claim shall be paid in full in Cash on the unpaid portion of such General Unsecured Claim on the latest of (i) the Effective Date (or as soon thereafter as reasonably practicable), (ii) the date on which such Claim would be paid in the ordinary course of business, or (iii) as otherwise agreed to by LEM and the holder of such Claim. |
| **Class D - Equity Interests in the Mezz 2 Debtor**: Consists of the legal, equitable, contractual and other rights of any Person with respect to the membership interests, common stock or any other equity securities of, or ownership interests in, the Mezz 2 Debtor. | *Impaired.* On the Effective Date, based on the agreements and the Settlement Agreement implemented in connection with the Plan, the holder of Equity Interests in Class D shall receive for the benefit of its nominee (i) a cash payment in the amount of $9,250,000 and the Installment Note as set forth in the Settlement Agreement, which are being funded by Venture LLC and (ii) the releases and indemnities under the Plan, the Settlement Agreement and related documents. The Equity Interests in the Mezz 2 Debtor shall be cancelled as of the Effective Date. |

D.    Hearing on Disclosure Statement and Plan; Recommendation

The Bankruptcy Court has scheduled the hearing on the Disclosure Statement and confirmation of the Plan for **August ___, 2010 at ___: ___ Prevailing Eastern Time**. For a more detailed discussion of the hearing on the Disclosure Statement and confirmation on the Plan, see Section XII - "CONFIRMATION PROCEDURES" below.

The Debtors believe that the Plan represents the best recovery available for creditors. The Debtors reached that conclusion after an analysis of the financial prospects for the Debtors, an examination of the pending litigation and the costs and risks of such litigation, extensive negotiations with their creditors, and a review of available alternatives. Based on these factors, the Debtors believe that the Sale and follow on liquidation of the Debtors' Estates pursuant to the Plan provides the best recoveries possible for holders of Claims and Equity Interests, and the Debtors strongly recommend that holders vote to accept the Plan. Moreover, the holders of the DekaBank Claim and the USRHC Claim, as well as Host, in its capacity as an investor in the Venture LLC, and LEM, as holder of the Mezz 2 Equity Interest, each support confirmation of the Plan.

4

II.   GENERAL OVERVIEW OF THE DEBTORS

As noted above, on March 23, 2010 and March 25, 2010, the Mezz 1 Debtor and the Mezz 2 Debtor, respectively, commenced these Chapter 11 Cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code. Each of the Debtors is a single-purpose entity with a single secured mezzanine lender as its respective sole creditor. The Debtors were created as part of a tiered structure of mezzanine debt designed to reflect the seniority of each mezzanine lender, and their respective rights to the ultimate collateral: the Hotel (defined below) and its income.

A.   Acquisition of the Hotel

On or about October 2006, Hotels Union Square LLC (the "Hotel Owner"), then an indirect subsidiary of Istithmar Building FZE ("Istithmar Guarantor") acquired the W Hotel- Union Square (the "Hotel" or the "Property") for approximately $285 million, as further discussed below. The Hotel Owner is not a debtor in these Chapter 11 Cases.

The acquisition of the Property by Hotel Owner was financed by (i) an approximately $115 million mortgage (the "Mortgage Debt"); (ii) mezzanine debt aggregating approximately $117 million (the "Original Mezz Debt"); and (iii) an equity investment behind the Mortgage Debt and Original Mezz Debt of approximately $53 million.

The Mortgage Debt is secured by a first mortgage lien on the Hotel, originally held by Column Financial, Inc. ("Column"). Column subsequently sold the Mortgage Debt, and it is currently held by Wells Fargo Bank, NA., as trustee for the registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-C5 (the "Mortgage Lender"), with LNR as special servicer for the Mortgage Debt.

In addition to the Mortgage Debt, Column provided the mezzanine financing in the approximate amount of $117 million. This financing was originally divided into four tranches, and then restructured into three tranches and sold to other parties by Column, as discussed below. As further described below, these Chapter 11 Cases were initiated as a result of defaults on the mezzanine financings.

The Hotel Owner is 100% owned by the Mezz 1 Debtor, which is 100% owned by the Mezz 2 Debtor, which, in turn, was previously 100% owned by Istithmar Hotels Union Square Mezz 3 LLC (the "Mezz 3 Entity") and is now owned by LEM as a result of a UCC foreclosure sale that followed a default under the terms of LEM's mezzanine loan described in part II.B.3 below. The Mezz 3 Entity is not a debtor in these Chapter 11 Cases.

B.   The Debtors' Corporate Structure

As noted above, in addition to the Mortgage Debt, the acquisition of the Hotel was financed by a total of approximately $117 million in mezzanine financing, which is now held in three tranches. As borrowers, each of the Mezz 1 Debtor, the Mezz 2 Debtor and the Mezz 3 Entity is a party to a mezzanine loan originally entered into with Column. Each of the mezzanine loans was secured by the respective borrowers' equity interest in its direct subsidiary; *i.e.*, the Mezz 3 Loan was secured by the Mezz 3 Entity's interests in the Mezz 2 Debtor, the Mezz 2 Loan was secured by the Mezz 2 Debtor's interests in the Mezz 1 Debtor, and the Mezz 1 Loan was secured by the Mezz 1 Debtor's interests in the Hotel Owner. All of the mezzanine loans were evidenced and secured by comprehensive sets of loan documents customary for mezzanine financing.

5

The relationships among the lenders are governed by that certain intercreditor agreement dated December 11, 2006, originally among Column, as mortgage lender and holder of all three tranches of debt, and now among the Mortgage Lender, DekaBank as holder of the Mezz 1 Loan, USRHC as holder of the Mezz 2 Loan, and LEM as holder of the Mezz 3 Loan (the "Intercreditor Agreement"). The Intercreditor Agreement provides for the relative priority of the loans -- the Mortgage Debt has first priority with respect to Hotel income and the collateral that secured the first mortgage loan; the Mezz 1 Loan has second priority; the Mezz 2 Loan has third priority; and the Mezz 3 Loan has fourth priority.

### 1. The Mezz 1 Debtor and the Mezz 1 Loan

The Mezz 1 Debtor is the owner of the sole membership in the Hotel Owner. The Mezz 1 Debtor borrowed approximately $60 million (the "Mezz 1 Loan") from Column on a non-recourse basis secured by a pledge of its membership interest in the Hotel Owner. Column thereafter restructured and sold all of its interest in the Mezz 1 Loan to DekaBank. In this regard, the equity in the Hotel Owner is pledged to DekaBank pursuant to that certain Amended and Restated Mezzanine A Pledge and Security Agreement (the "Mezz 1 Pledge Agreement") dated as of December 11, 2006, and effective as of October 4, 2006, between DekaBank (as assignee of Column) and the Mezz 1 Debtor, to secure the Mezz 1 Loan.

### 2. The Mezz 2 Debtor and the Mezz 2 Loan

The Mezz 2 Debtor borrowed approximately $37 million (the "Mezz 2 Loan") from Column on a non-recourse basis secured by a pledge of the sole membership interest of the Mezz 1 Debtor. Column thereafter restructured and sold all of its rights and interest in the Mezz 2 Loan to Sandelman Partners CRE CDO I, Ltd., which thereafter assigned all of its interest in the Mezz 2 Loan to Sandelman Partners Multi-Strategy Master Fund, Ltd. ("Sandelman"). The Mezz 2 Debtor is a party to that certain Amended and Restated Mezzanine B Pledge and Security Agreement (the "Mezz 2 Pledge Agreement"), dated as of December 11, 2006 and effective as of October 4, 2006, between Sandelman and the Mezz 2 Debtor, to secure Sandelman's second priority mezzanine loan.

On or about March 8, 2010, Sandelman transferred its interests in the Mezz 2 Loan to Union Square Real Holding Corporation ("USRHC"). In connection therewith, USRHC assumed the obligations of Sandelman under the Intercreditor Agreement and agreed to be bound by the terms and provisions thereof. Pursuant to the Intercreditor Agreement, USRHC is subject to a broad subordination in favor of DekaBank as lender to the Mezz 1 Debtor. LEM has asserted a claim challenging the validity of the transfer by Sandelman to USRHC, as described further in part IV.F.1 below.

### 3. The Mezz 3 Entity and the Mezz 3 Loan

The Mezz 3 Entity, which is not a debtor in these Chapter 11 Cases, borrowed approximately $20 million (the "Mezz 3 Loan") from Column on a non-recourse basis secured by a pledge of the sole membership interest of the Mezz 2 Debtor. Column thereafter restructured and sold its interests in the Mezz 3 Loan, which Mezz 3 Loan was ultimately assigned to 201 Park Avenue South PEH L.L.C ("LEM").

In October 2009, after the occurrence of payment defaults under the terms of the Mezz 1 Loan, the Mezz 2 Loan and the Mezz 3 Loan, LEM foreclosed on the collateral securing the Mezz 3 Loan, which collateral was the equity in the Mezz 2 Debtor. LEM submitted a credit bid in the approximate amount of $2 million, and as a result of that foreclosure sale, LEM acquired the sole membership interest of the Mezz 2 Debtor.

6

4.    *Overview of General Ownership and Debt Structure*

Moreover, prior to recent events, the general ownership and debt structure of the borrowing group was as follows:

$20 million original principal amount Mezz 3 Loan held by LEM. Only asset was equity in Mezz 2 Debtor pledged as collateral to LEM. Foreclosed on by LEM in December 2009. No other creditors

$37 million original principal amount Mezz 2 Loan held until recently by a Sandelman Partners affiliate and transferred to USRHC in March 2010. LEM is challenging the validity of that transfer. Only asset was equity in Mezz 1 Debtor pledged as collateral to Sandelman affiliate, which was purchased by USRHC pre-petition. UCC Foreclosure Sale had been scheduled for April 1, 2010. No other creditors.

$60 million original principal amount Mezz 1 Loan held by DekaBank. Only asset was equity in Hotel Owner pledged as collateral to DekaBank. UCC Foreclosure Sale had been scheduled for March 24, 2010. No other creditors.

$115 million original principal amount mortgage. Ordinary course trade and other creditors.

```
            Istithmar Affiliate
                    |
               Owns 100%
                    |
             Mezz 3 Entity
                    |
               Owns 100%
                    |
             Mezz 2 Debtor
                    |
               Owns 100%
                    |
             Mezz 1 Debtor
                    |
               Owns 100%
                    |
              Hotel Owner
```

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

C.     Events Leading to Chapter 11 Bankruptcy

These Chapter 11 Cases are the direct result of the financial problems caused by a downturn in the hotel market in New York City. As a result of this downturn, although the Mortgage Debt remains current, no payments have been made in respect of any of the mezzanine debt since October 2009.

As a result of ongoing payment defaults under the terms of the Mezz 1 Loan, on or about January 2010, DekaBank gave notice of its intended disposition of the collateral securing the Mezz 1 Loan, namely the membership interest in the Hotel Owner. In January, 2010, DekaBank began noticing a public UCC foreclosure sale (the "Foreclosure Sale") of the equity interests in the Hotel Owner. On March 23, 2010, which was the afternoon before the Foreclosure Sale was to take place, LEM caused the Mezz 1 Debtor to file a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

Along with the Mezz 1 Loan, the Mezz 2 Loan was also in default under its terms, and a UCC foreclosure sale on the Mezz 2 Loan was scheduled for April 1, 2010. On March 25, 2010, the Mezz 2 Debtor filed a voluntary chapter 11 petition.

In March 2010, LEM filed suit in the Southern District of New York (Case No. 10-Civ-1625 (RJS) against Istithmar Guarantor, whereby LEM seeks to enforce a certain guaranty against Istithmar Guarantor, which lawsuit will be resolved pursuant to the Settlement Agreement being implemented in connection with the confirmation of the Plan.

III.    OVERVIEW OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for similarly situated holders of claims and equity interests, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the commencement of the chapter 11 case. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a plan is the principal objective of a chapter 11 case. A bankruptcy court's confirmation of a plan binds the debtor, any entity acquiring property under the plan, any holder of a claim or equity interest in a debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code, to the terms and conditions of the confirmed plan. Subject to certain limited exceptions, the order issued by the bankruptcy court confirming a plan provides for the treatment of claims and equity interests in accordance with the terms of the plan.

Prior to soliciting acceptances of a proposed plan, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the plan. This Disclosure Statement is submitted in accordance with section 1125 of the Bankruptcy Code.

8

IV.     EVENTS DURING THE CHAPTER 11 CASES

A.     Retention of the Debtors' Professionals

On April 23, 2010, the Debtors sought authority pursuant to section 327(a) of the Bankruptcy Code to employ and retain Potter Anderson & Corroon LLP as counsel to the Debtors (Docket No. 45). On June 25, 2010, the Bankruptcy Court entered an order authorizing the employment and retention of the Potter Anderson & Corroon LLP as counsel to the Debtors *nunc pro tunc* to the Petition Date (Docket No. 113).

B.     Joint Administration

On June 24, 2010, the Bankruptcy Court entered an order (Docket No. 112) authorizing the joint administration of these Chapter 11 Cases solely for procedural purposes in order to reduce the financial costs and other resources required to administer the Chapter 11 Cases.

C.     Filing of Schedules and Statements of Financial Affairs

The Debtors filed their Schedules and Statements of Financial Affairs on April 26, 2010 (collectively, as amended from time to time, the "Schedules").

D.     Bar Date

The sole creditor of the Mezz 1 Debtor is DekaBank and the sole creditor of the Mezz 2 Debtor is USRHC -- each of which have been active in the Chapter 11 Cases. Accordingly, the Debtors have not, and do not intend to establish a bar date for the filing of proofs of claim against the Debtors. Each of the DekaBank Claim and the USRHC Claim are being allowed and resolved pursuant to the terms of the Plan, and to the extent any other valid Claims are asserted against the Debtors, such Claims will be resolved by LEM under the LEM Funding Obligations as provided for under the Plan. Specifically, if it is determined that there are any creditors who hold valid Administrative Expense Claims, Priority Tax Claims, Other Secured Claims, and General Unsecured Claims against either the Mezz 1 Debtor or the Mezz 2 Debtor, LEM has agreed, to the extent such claims are determined to be valid and payable by the Debtors, to pay such Claims pursuant to the terms of the Plan and the LEM Funding Obligations.

E.     Motions by DekaBank and USRHC

Early on in these Chapter 11 Cases, DekaBank and USRHC filed certain motions in order to protect their rights as secured creditors, including motions for relief from stay to permit the applicable Foreclosure Proceedings to go forward against each of the Mezz 1 and the Mezz 2 Debtor, and motions to dismiss the Chapter 11 Cases entirely. With respect to each of these motions, discovery, depositions and hearing preparation, as applicable, was undertaken by the Debtors, DekaBank and USRHC. As all of the parties to these motions have reached a global settlement, as set forth in the Settlement Agreement, which will be implemented pursuant to the Plan, these motions, including all discovery and depositions incident thereto, have been continued by agreement of the parties pending confirmation and implementation of the Plan.

F.    Adversary Proceedings

1.    *USRHC Adversary Proceeding*

On March 31, 2010, USRHC filed an adversary proceeding (Case No. 10-50856) to enjoin the Mezz 1 Debtor, and the individuals purporting to act on its behalf, from causing the Hotel Owner to file a voluntary bankruptcy petition (the "First Adversary Complaint"). By the First Adversary Complaint, USRHC alleged that if the Hotel Owner were to become the subject of a bankruptcy case, the Hotel would lose substantial future bookings and the ability to obtain and maintain trade credit, and would face acceleration of the Mortgage Debt. In response, the Mezz 2 Debtor challenged whether USRHC is the valid holder of the Mezz 2 Debt, and whether USRHC has standing to challenge the filing of a petition on behalf of the Hotel Owner, which dispute is being resolved pursuant the Plan and Settlement Agreement.

On April 6, 2010, the Bankruptcy Court entered an agreed upon order (the "First Agreed Order") which, among other things, prohibited the filing of a voluntary bankruptcy petition by or on behalf of the Hotel Owner until the Bankruptcy Court had entered a final judgment or judgments on all matters at issue at the Evidentiary Hearing (as defined and provided for in the First Agreed Order). Subsequently, each of USRHC, DekaBank and the Debtors agreed that such Evidentiary Hearing, and the continuation of the adversary proceeding itself, would proceed only if the parties were unable to confirm the Plan and consummate the Settlement Agreement.

2.    *DekaBank Adversary Proceeding*

On May 29, 2010, DekaBank filed an adversary proceeding (Case No. 10-51084) also seeking to enjoin the Mezz 1 Debtor, and the individuals purporting to act on its behalf, from causing the Hotel Owner to file a voluntary bankruptcy petition (the "Second Adversary Complaint"). The Second Adversary Complaint largely reiterated the allegations of the First Adversary Complaint, while asserting that DekaBank, rather than USRHC, should be the primary movant for the injunctive relief sought.

On June 17, 2010, the Bankruptcy Court entered an agreed upon order (the "Second Agreed Order") which, among other things, prohibited the filing of a voluntary bankruptcy petition by or on behalf of the Hotel Owner until the Bankruptcy Court ruled on any matters at issue at the Evidentiary Hearing (as defined and provided for in the Second Agreed Order), and USRHC, DekaBank and the Debtors agreed that such Evidentiary Hearing, and the continuation of the adversary proceeding itself, would proceed only if the parties were unable to confirm the Plan and consummate the Settlement Agreement.

G.    Meeting of Creditors

The meeting of creditors pursuant to section 341 of the Bankruptcy Code was held on June 18, 2010, whereat a representative of the Debtors appeared and was examined under oath by a representative of the United States Trustee.

V.    OVERVIEW OF THE PLAN

Faced with the prospect of foreclosure on its principal asset, namely the direct and indirect equity interests in the Hotel Owner, before a recapitalization of the debt encumbering the Hotel could be implemented, the Debtors commenced these Chapter 11 Cases. The Plan, which is attached hereto as Exhibit A, together with the Settlement Agreement, reflects the consensual agreement among the principal parties in interest with respect to the transfer of the ownership of the Hotel, and the payments and distributions to creditors and equity holders that are to be made pursuant to the Plan.

In summary, pursuant to the terms of the Plan and the Settlement Agreement, Host shall form Venture LLC, in which USRHC has agreed to be a co-investor, to purchase the Hotel Equity from the Mezz 1 Debtor, with the proceeds from the Sale thereafter available to satisfy the Debtors' obligations under the Plan. The Plan will be funded by (i) the purchase price paid by Venture LLC to Mezz 1 Borrower for the Hotel Equity and (ii) to the extent required, funds from LEM under the LEM Funding Obligations, and will resolve each of the DekaBank Claim and USRHC Claim. In addition, in connection with the implementation of the Plan, the Settlement Agreement Parties will release the Debtors and each other from all liabilities, claims and obligations that exist among such parties as of immediately prior to the Effective Date. Each of DekaBank, USRHC and LEM fully participated with the Debtors in the drafting and negotiation of the Plan, and fully support confirmation of the Plan.

The above provides a brief overview of the actions that will be taken to effectuate the consensual agreements being implemented by the Plan and the Settlement Agreement. As stated previously, the terms of the Plan and the Settlement Agreement, as well as the documents implementing the transactions contemplated by the Plan and the Settlement Agreement, govern in the event of any inconsistency with the summaries provided in this Disclosure Statement.

## VI. PROVISIONS OF THE PLAN

### A. Administrative Expense and Priority Claims

#### 1. *Administrative Expense Claims*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, the Debtors, or LEM on behalf of the Debtors pursuant to the LEM Funding Obligations, will pay to such holder Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date or (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes Allowed; *provided, however,* that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, or liabilities arising under loans, advances, or other financial accommodations, made to or other obligations incurred by the Debtors, as debtors in possession, whether or not incurred in the ordinary course of business, will be paid by the Debtors, or by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

#### 2. *Compensation and Reimbursement Claims*

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) will file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, (ii) will be paid in full from the Debtors' Cash on hand, or by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations, in such amounts as are allowed by the Bankruptcy Court (A) on the later of (x) the Effective Date, or (y) within five (5) Business Days after the date on which the order approving such Allowed Administrative Expense Claim is entered, or (B) on such other terms as may be mutually agreed on between the holder of such an Allowed Administrative Expense Claim and the Debtors. The Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

11

### 3. *Priority Tax Claims*

The Debtors do not believe that there are any Priority Tax Claims against the Debtors' Estates. To the extent that any valid Priority Tax Claims are filed, they will be paid by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim will receive, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the (a) Effective Date or (b) first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date will be paid in the ordinary course of business as such obligations become due.

### B. Treatment of Claims and Equity Interests

Except as otherwise specified in the Plan, all distributions will be made on the Effective Date or as soon thereafter as practical.

### 1. *Mezz 1 Debtor*

#### a. DekaBank Claim (Class 1)

The Dekabank Claim will be allowed in the amount of the proof of claim filed by DekaBank. On the Effective Date, in full satisfaction, settlement, release, and discharge of, and in exchange for such Class 1 Claim, based on the agreements and the Settlement Agreement implemented in connection with the Plan, including the release of the Mezz 1 Collateral, the holder of the Class 1 Claim will receive (i) Cash in the amount of $61 million (which is the same amount in the purchase contract for its UCC sale if that had been held), (ii) Cash in the amount of the Protective Advances made by the holder of the Class 1 Claim after March 24, 2010, if any, and (iii) the releases and indemnities under the Plan, the Settlement Agreement and related documents.

#### b. Other Secured Claims against Mezz 1 Debtor (Class 2)

Each holder of a valid Other Secured Claim against the Mezz 1 Debtor will receive, in full satisfaction, settlement, release and discharge of and in exchange for, such Other Secured Claim, (i) Cash equal to the value of its Other Secured Claim or (ii) such other less favorable treatment to which LEM and such holder will have agreed upon in writing. Notwithstanding the foregoing, any Claim arising as a result of a tax lien that would otherwise be an Other Secured Claim will be paid in accordance with Section 2.3 of the Plan.

The Debtors do not believe that there are any Other Secured Claims against the Debtors' Estates and that any Claim which asserted secured status would likely be junior to DekaBank's lien on the Mezz 1 Collateral and thus would be treated as a Mezz 1 Debtor - Class 3 Claim. To the extent that any valid Other Secured Claims are filed, they will be paid by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations in accordance with Section 5.8 of the Plan.

12

c.  General Unsecured Claims against Mezz 1 Debtor (Class 3)

In full satisfaction, settlement, release, and discharge of, and in exchange for such Class 3 Claim, each holder of a valid Class 3 Claim will be paid in full in Cash on the unpaid portion of such General Unsecured Claim on the latest of (i) the Effective Date (or as soon thereafter as reasonably practicable), (ii) the date on which such Claim would be paid in the ordinary course of business, or (iii) as otherwise agreed to by LEM and the holder of such Claim.

The Debtors do not believe that there are any General Unsecured Claims against the Debtors' Estates. To the extent that any valid General Unsecured Claims are filed, they will be paid by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations in accordance with the Plan.

d.  Equity Interests in Mezz 1 Debtor (Class 4)

On the Effective Date, based on the agreements and the Settlement Agreement implemented in connection with the Plan, the holder of Equity Interests in Class 4 will receive the consideration set forth under Sections 4.2(a) and 4.2(d) of the Plan, which will be directly distributed to such holders as set forth in the Plan. The Equity Interests in Mezz 1 Debtor will be cancelled as of the Effective Date.

2.  *Mezz 2 Debtor*

a.  USRHC Claim (Class A)

The USRHC Claim will be allowed in the amount of $37,000,000. On the Effective Date, in full satisfaction, settlement, release, and discharge of, and in exchange for such Class A Claim, based on the agreements and the Settlement Agreement implemented in connection with the Plan, including, but not limited to, the agreement of the holder of the Class A Claim to release the Mezz 2 Collateral, the holder of the Class A Claim or its nominee will receive (i) the right to purchase an interest in Venture LLC as set forth in the Settlement Agreement, (ii) the Debtors' agreement as part of the settlement under the Plan and the Settlement Agreement to release all claims challenging that USRHC is the rightful present holder of the Mezz 2 Loan, and (iii) the releases and indemnities under the Plan, the Settlement Agreement and related documents. The Schedules of Mezz 2 Debtor will be deemed to be amended as of the Effective Date to replace Sandelman Partners CRE CDO I, Ltd. with USRHC on Schedule D thereof.

b.  Other Secured Claims against Mezz 2 Debtor (Class B)

Each holder of a valid Other Secured Claim against the Mezz 2 Debtor will receive, in full satisfaction, settlement, release and discharge of and in exchange for, such Other Secured Claim, (i) Cash equal to the value of its Other Secured Claim or (ii) such other less favorable treatment to

13

which LEM and such holder will have agreed upon in writing. Notwithstanding the foregoing, any Claim arising as a result of a tax lien that would otherwise be an Other Secured Claim will be paid in accordance with the Plan.

The Debtors do not believe that there are any Other Secured Claims against the Debtors' Estates and that any Claim which asserted secured status would likely be junior to USRHC's lien on the Mezz 2 Collateral and thus would be treated as a Mezz 2 Debtor - Class 3 Claim. To the extent that any valid Other Secured Claims are filed, they will be paid by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations in accordance with the Plan.

c.      General Unsecured Claims against Mezz 2 Debtor (Class C)

In full satisfaction, settlement, release, and discharge of, and in exchange for such Class C Claim, each holder of a valid Class C Claim will be paid in full in Cash on the unpaid portion of such General Unsecured Claim on the latest of (i) the Effective Date (or as soon thereafter as reasonably practicable), (ii) the date on which such Claim would be paid in the ordinary course of business, or (iii) as otherwise agreed to by LEM and the holder of such Claim.

The Debtors do not believe that there are any General Unsecured Claims against the Debtors' Estates. To the extent that any valid General Unsecured Claims are filed, they will be paid by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations in accordance with the Plan.

d.      Equity Interests in Mezz 2 Debtor (Class D)

On the Effective Date, based on the agreements and the Settlement Agreement implemented in connection with the Plan, the holder of Equity Interests in Class D will receive for the benefit of its nominee (i) a cash payment in the amount of $ 9,250,000 and the Installment Note as set forth in the Settlement Agreement, which are being funded by Venture LLC and (ii) the releases and indemnities under the Plan, the Settlement Agreement and related documents. The Equity Interests in Mezz 2 Debtor will be cancelled as of the Effective Date.

C.      Means for Implementation

1.      *Effect of Distribution to Creditors*

Except as specifically provided in the Plan, all Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and will be final, and no Plan distribution to the holder of a Claim in one Class will be subject to being shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, or other similar inter-creditor arrangement, all of which are being cancelled and released without giving rise to any damages or claims against the Debtors.

2.      *Joint Chapter 11 Plan*

The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor. The Debtors' estates will be consolidated for procedural purposes only and, for the avoidance of doubt, will not be substantively consolidated.

3.      *Settlement Agreement and Sale*

Pursuant to the terms and conditions of the Settlement Agreement, which the Debtors will file with the Court under seal, Mezz 1 Debtor has agreed to sell the Hotel Equity to Venture LLC (the "Sale") upon the Effective Date, and will thereupon apply the proceeds of such Sale on account of the distributions to be made under the Plan. The Effective Date will occur upon the Closing, as defined and provided for under the Settlement Agreement.

4.      *Liquidation of the Debtors*

a.      The Debtors will continue to operate as Debtors in Possession during the period from the Confirmation Date to the Effective Date. Each of the Debtors will be deemed to have been liquidated as of the Effective Date, and all Equity Interests in each Debtor will automatically be canceled and extinguished as of the Effective Date without the need for any further action by the Court or any Entity.

b.      Notwithstanding the foregoing, as soon as practicable after the Effective Date, each of the Debtors will file its certificate of dissolution, together with all other necessary corporate documents, to effect its dissolution under the applicable laws of the state of Delaware. The filing by each Debtor of its certificate of dissolution will be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by any members, stockholders, managers or the board of directors of each such Debtor.

5.      *Cancellation of Agreements and Securities*

Except (i) for purposes of evidencing a right to distributions under the Plan, or (ii) otherwise as provided in the Plan, all the agreements and other documents evidencing the Claims, Equity Interests, or rights of any holder of a Claim or Equity Interests Impaired under the Plan will be cancelled on the Effective Date.

15

### 6. *Directors, Managers and Officers*

On the Effective Date, the authority, power and incumbency of the persons then acting as directors, managers and officers of the Debtors will be terminated and such directors, managers and officers will be deemed to have resigned or to have been removed without cause, *provided, however,* that the Debtors will retain at least one acting officer for the purposes of complying with the Plan.

### 7. *Effectuating Documents; Further Transactions*

The managers, chairman of the board of directors, president, chief financial officer, any executive vice-president or senior vice-president, or any other appropriate officer, representative or agent of each Debtor will be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary, assistant secretary, manager or similar officer of the appropriate Debtor will be authorized to certify or attest to any of the foregoing actions.

### 8. *Sources of Consideration for Plan Distributions*

Except as otherwise provided in the Plan or the Confirmation Order, the consideration necessary for the Debtors to make payments pursuant to the Plan will be obtained (i) from the purchase price paid pursuant to the Settlement Agreement by Venture LLC to Mezz 1 Borrower for the Hotel Equity and (ii) to the extent provided in the Plan, from funds paid by LEM under the LEM Funding Obligation. The Debtors do not believe there are any Priority Tax Claims, Other Secured Claims or General Unsecured Claims against the Debtors. In this regard, to the extent that any such Claims, or any Administrative Expense Claims of the Debtors, are determined valid and payable by the Debtors, LEM has agreed to pay such Claims pursuant to the LEM Funding Obligations.

### 9. *Sale of Hotel Equity*

On the Effective Date, the Debtors are authorized to complete the Sale, and are authorized to execute, deliver, file, record and issue all agreements and other related documents necessary or advisable to effectuate the Sale (collectively, the "Sale Documents"), in each case, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by the Settlement Agreement). Upon the effectiveness of the Sale in accordance with the terms of the Sale Documents, (i) the Debtors are authorized to perform their obligations thereunder including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages or indemnities, (ii) the Sale Documents will constitute the legal, valid and binding obligations of the Debtors which are parties thereto, enforceable in accordance with their respective terms, and (iii) no obligation, payment, transfer or grant of security under the Sale Documents will be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff or counterclaim. Confirmation of the Plan will be deemed approval of the Sale (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) free and clear of all Claims, liens, encumbrances, charges and other interests and authorization for the Debtors to enter into and execute the Sale Documents.

16

10.    *Intercompany Claims*

On the Effective Date, any Intercompany Claims of a Debtor against the other Debtor and/or their respective Affiliates will be cancelled and discharged.

11.    *Distribution of Securities and Related Documentation*

On, or as soon as reasonably practicable after, the Effective Date, the interests in Venture LLC, rights to purchase interests in Venture LLC and any and all other securities, notes, instruments, certificates and other documents or agreements required to be issued, executed or delivered pursuant to the Plan or the Settlement Agreement will be directly delivered by Venture LLC to the recipients thereof in accordance with the terms and conditions thereof, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person. All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, and any other agreement or document related to or entered into in connection with same, will become, and will remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).

D.    Distributions

1.    *Distribution Record Date*

At the close of business on the Confirmation Date, the transfer ledgers for holders of the Classes of Claims or Equity Interests maintained by the Debtors will be closed, and there will be no further changes in the record holders of such debt. The Debtors and the Disbursing Agent, if any, will have no obligation to recognize any transfer of any such Claims or Equity Interests occurring after the Confirmation Date and will be entitled instead to recognize and deal for all purposes under the Plan with only those record holders listed on the transfer ledgers as of the close of business on the Confirmation Date.

2.    *Date of Distributions*

Except as otherwise provided in the Plan, distributions and deliveries under the Plan with respect to Allowed Claims or Claims deemed valid for purposes of the Plan will be made on the Effective Date or as soon thereafter as is practicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but will be deemed to have been completed as of the required date.

3.    *Disbursing Agent*

The Disbursing Agent will make all distributions required under the Plan. If the Disbursing Agent is an independent third party designated by the Debtors to serve in such capacity, such Disbursing Agent will receive, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Debtors on terms acceptable to the Debtors. No Disbursing Agent will be required to give any bond or surety or other security for the performance of its duties unless

otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond will be paid by the Debtors.

### 4. *Powers of Disbursing Agent*

The Disbursing Agent will be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated thereby, and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court or pursuant to the Plan.

### 5. *Surrender of Securities or Instruments*

As a condition to receiving any distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any holder of such instrument or note that fails to (i) surrender such instrument or note, or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the first anniversary of the Effective Date will be deemed to have forfeited all rights and Claims and may not participate in any distribution under the Plan. Any distribution so forfeited will become property of the Debtors.

### 6. *Delivery of Distributions*

Subject to Bankruptcy Rule 9010, or as otherwise provided in the Plan, all distributions to any holder of an Allowed Claim or any Claim deemed valid for purposes of the Plan will be made to the Disbursing Agent, who will transmit such distribution to the last known address of the applicable holders of such Claims. In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent will use reasonable efforts to determine the current address of such holder, but no distribution to such holder will be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution will be made to such holder without interest; *provided* that such distributions will be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date. After such date, all unclaimed property or interest in property will revert to the Debtors, and the Claim of any other holder to such property or interest in property will be discharged and forever barred.

### 7. *Manner of Payment Under Plan*

At the option of the Debtors, any Cash payment to be made under the Plan may be made by a check, wire transfer, or such other commercially reasonable manner as the payor will determine in its sole discretion, or as otherwise required or provided in applicable agreements.

### 8. *Withholding and Reporting Requirements*

In connection with the Plan and all distributions thereunder, the Disbursing Agent will, to the extent applicable as determined in its sole discretion, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan will be subject to any such withholding and reporting requirements. The Disbursing Agent will be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements. All persons holding Claims will be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provisions of the Plan to the contrary, (a) each holder of an Allowed Claim or any Claim deemed valid for purposes of the

18

Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distributions, and (b) no distribution will be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Disbursing Agent for the payment and satisfaction of such tax obligations. Any Cash, interests in Venture LLC, other agreements and document and/or other consideration or property to be distributed pursuant to the Plan will, pending the implementation of such arrangements, be treated as an unclaimed distribution pursuant to the Plan. Any party issuing any instruments or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

### 9. *Setoffs*

The Debtors may, but will not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution will be made), any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan will constitute a waiver or release by the Debtors of any such claim the Debtors may have against the holder of such Claim. Nothing in the Plan will be deemed to expand rights to setoff under applicable non-bankruptcy law. Notwithstanding the foregoing, the Debtors will be deemed to waive and will have no right of setoff or recoupment against the holders of the DekaBank Claim and the USRHC Claim.

### 10. *Distributions After Effective Date*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims or are otherwise deemed to be valid Claims pursuant to the Plan will be deemed to have been made on the Effective Date.

### 11. *Allocation of Distributions Between Principal and Interest*

To the extent that any Allowed Claim or Claim otherwise deemed to be valid pursuant to the Plan entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution will be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### E. Procedures for Resolving Disputed, Contingent, and Unliquidated Claims

### 1. *Objections to Claims*

During the pendency of the Chapter 11 Cases, the Debtors or LEM will be entitled to object to Claims other than the DekaBank Claim and the USRHC Claim. Any objections to Claims will be served and filed on or before the later of (i) one hundred twenty (120) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above.

### 2. *Payments and Distributions with Respect to Disputed Claims*

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under the Plan will be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or is otherwise determined to be a valid Claim for purposes of the Plan.

3. *Estimation of Claims*

The Debtors or LEM may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or LEM may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

4. *Distributions Relating to Disputed Claims*

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent will distribute to the holder of such Claim, the property distributable to such holder with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim will not receive any distribution on account of the portion of such Claim that is disallowed.

5. *Preservation of Rights to Settle Claims*

Except as otherwise provided in the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors will retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any Person or entity without the approval of the Bankruptcy Court, subject to the terms of the Plan, the Confirmation Order and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Debtors or their successor(s) may pursue such retained Claims, rights, or causes of action, suits, or proceedings, as appropriate, in accordance with the best interests of the Debtors or their successor(s) who hold such rights.

6. *Resolution of Claims Post-Closing of the Chapter 11 Cases*

Anything in the Plan to the contrary notwithstanding, from and after the closing of the Chapter 11 Cases, LEM will be entitled to resolve any Claims in such manner and in any court of competent jurisdiction, as LEM may elect in its sole discretion.

F.   Executory Contracts and Unexpired Leases

1. *General Treatment*

Except as otherwise provided in the Plan, the Debtors do not believe there are any executory contracts or unexpired leases to which any of the Debtors are a party. Out of an abundance of caution, as of the Effective Date, to the extent there are any executory contracts or unexpired leases, such executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected.

20

2.    *Rejection Claims*

In the event that a claimant asserts it was a party to an executory contract or unexpired lease with the Debtors which was rejected pursuant to the Plan, and such rejection results in damages to the other party or parties to such contract or lease, a Claim for such damages, will be forever barred and will not be enforceable against the Debtors, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served on counsel for the Debtors on or before the date that is thirty (30) days after the Effective Date. Any claim arising from the rejection of any executory contract or unexpired lease will be considered a General Unsecured Claim, and subject to allowance, paid in accordance with the Plan, as applicable.   For the avoidance of doubt, each of the Mezz 1 Loan Documents and the Mezz 2 Loan Documents are not executory contracts and in any event are being released and terminated pursuant to the Plan and the holders thereof are receiving the applicable treatment under the Plan and will not be entitled to any further damages or Claims, including rejection claims, as a result of such release and termination.

3.    *Pre-existing Obligations to the Debtors under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any executory contract or unexpired lease pursuant to the Plan or otherwise will not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any nonbankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors from counterparties to rejected or repudiated executory contracts.

G.    Conditions Precedent

1.    *Conditions Precedent to Confirmation*

The confirmation of the Plan is subject to the satisfaction or waiver of the following conditions precedent:

> a.    the Confirmation Order will be in form and substance reasonably acceptable to the Debtors, DekaBank, Host and USRHC; and
>
> b.    the Settlement Agreement will not have been terminated.

2.    *Conditions Precedent to the Effective Date*

The occurrence of the Effective Date of the Plan is subject to the satisfaction or waiver of the following conditions precedent:

> a.    the Confirmation Order will be a Final Order in form and substance reasonably satisfactory to the Debtors, DekaBank, Host and USRHC;
>
> b.    all other actions, documents and agreements necessary to implement the Plan will have been effectuated or executed; and
>
> c.    the conditions to closing set forth in the Settlement Agreement will have been satisfied or waived in accordance with the terms thereof, other than those conditions to be satisfied simultaneously with the Effective Date.

21

3. *Effect of Failure of Conditions to Effective Date*

If the Settlement Agreement is terminated in accordance with its terms after the Confirmation Date or the Effective Date has not occurred by the Outside Date, then (i) the Confirmation Order will be deemed vacated without further order of the Bankruptcy Court, (ii) no distributions under the Plan will be made, (iii) the Debtors and all holders of Claims and Equity Interests will be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) all the Debtors' obligations with respect to the Claims and the Equity Interests will remain unchanged and nothing contained in the Plan will be deemed to constitute a waiver or release of any claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

4. *Waiver of Conditions*

Each of the conditions to confirmation and to the Effective Date may be waived in whole or in part by the Debtors, with the consent of DekaBank, Host and USRHC in their sole discretion, without any notice to other parties in interest or the Bankruptcy Court and without a hearing.

5. *Effect of Termination of Settlement Agreement*

Upon the termination of the Settlement Agreement at any time, (i) the Plan will automatically be deemed withdrawn and null and void, (ii) all votes cast in respect of the Plan will automatically be null and void and deemed withdrawn, and (iii) the Debtors and all holders of Claims and Equity Interests will be restored as provided for in the Settlement Agreement, and (iv) all the Debtors' obligations with respect to the Claims and the Equity Interests will remain unchanged and nothing contained in the Plan will be deemed to constitute a waiver or release of any claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

H. Effect of Confirmation

1. *Release of Liens*

On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates will be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest will revert to the Debtors.

2. *Satisfaction of Claims and Termination of Equity Interests*

Upon the Effective Date and in consideration of the rights afforded in the Plan and the payments and distributions to be made under the Plan, except as otherwise expressly provided in the Plan or in the Confirmation Order, each holder (as well as any trustees and agents on behalf of each holder) of a Claim against the Debtors or Equity Interest and any affiliate of such holder will be deemed to have forever waived and released the Debtors to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities of any kind, nature or description that arose prior to the Effective Date. On the Effective Date, all holders of such Claims and Equity Interests will be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such released and satisfied Claim against the Debtors or any of their assets or properties, or the terminated Equity Interests based on any act or omission, transaction, or other activity

22

of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

Except as otherwise provided in the Plan or in the Confirmation Order, all persons or entities who have held, now hold or may hold Claims against any of the Debtors or Equity Interests and all other parties in interest, along with their respective present and former employees, agents, officers, directors, principals and affiliates, are permanently enjoined from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to such Claim or Equity Interest against the Debtors, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors with respect to such Claim or Equity Interest, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors with respect to such Claim or Equity Interest, or (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligations due from Debtors, with respect to such Claim or Equity Interest. Such injunction will extend to any successors of the Debtors and their respective properties and interest in properties.

3.    *Term of Injunctions or Stays*

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

4.    *Injunction Against Interference with Plan*

On the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties-in-interest, along with their respective present or former employees, agents, officers, directors, or principals, will be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

5.    *Releases*

    a.    As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, (i) the Debtors and any person seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor to the Debtors or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, (ii) each holder of a Claim or Equity Interest that votes to accept the Plan and (iii) each of the Settlement Agreement Parties ((i)-(iii) collectively, the "Releasing Parties") will be deemed to unconditionally, forever release, waive, and discharge each Released Party, from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever in connection with or related in any way to the Debtors, the operation of the Debtors' businesses, the incurrence by the Debtors of any indebtedness or the use of proceeds thereof, the Chapter 11 Cases, and the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; *provided, however,* that nothing in the Plan

23

will be deemed to waive or release the rights of the Settlement Agreement Parties to enforce the Settlement Agreement or the Plan and the contracts, instruments, indentures, and other agreements or documents delivered thereunder or in connection therewith.

b.   Without limiting the generality of the foregoing, as of the Effective Date, the Debtors will be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 506(c), 510 545, 546, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtors and/or which the Debtors could have prosecuted as debtors or debtors in possession against the other Released Parties, whether brought under the Bankruptcy Code or other applicable law.

c.   Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the releases set forth in the Plan pursuant to Bankruptcy Rule 9019 and its finding that they are: (i) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and causes of action thereby released; (ii) in the best interests of the Debtors and all holders of Claims; (iii) fair, equitable and reasonable; (iv) approved after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any Claim or cause of action thereby released.

6.   *Exculpation*

**Notwithstanding anything provided in the Plan, as of the Effective Date and subject to the occurrence of the Effective Date, the following parties, entities, and individuals will have no liability for any action or failure to act with respect to formulation, negotiation, preparation, confirmation, or consummation of the Plan or the administration of the Chapter 11 Cases (other than liability determined by a final order of a court of competent jurisdiction for actions or failure to act amounting to willful misconduct, intentional fraud, or criminal conduct arising out of the Chapter 11 Cases or any liability arising out of an express contractual obligation): (i) the Debtors, (ii) the Settlement Agreement Parties, and (iii) with respect to each of the forgoing, each of their respective direct or indirect subsidiaries, current and former officers and directors, managers, members, employees, agents, representatives, financial advisors, professionals, accountants, and attorneys, and each of their predecessors, successors, and assigns. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence or willful misconduct.**

7.   *Retention of Causes of Action/Reservation of Rights*

a.   Except with respect to the releases and exculpation provided under the Plan, the Debtors will retain all causes of action, Claims, rights of setoff or recoupment, rights under the Bankruptcy Code, including, without limitation, the right to require the turnover of property of the Debtors' estates, or any applicable non-bankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their

24

officers, directors, or representatives; and (ii) the turnover of any property of the Debtors' estates.

b.     Nothing contained in the Plan or in the Confirmation Order will be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Debtors will have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

### 8.     *Solicitation of the Plan*

As of and subject to the occurrence of the Confirmation Date: (i) the Debtors will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (ii) the Debtors and each of their respective managers, directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys will be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

### 9.     *Exemption from Certain Transfer Taxes*

Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange (or deemed issuance, transfer or exchange) of a security, including, without limitation, the Hotel Equity, (b) the creation of any mortgage, deed of trust, Lien, pledge or other security interest, or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan (including, without limitation, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation, dissolution, deeds, bills of sale and transfers of tangible property) will not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders) or other similar taxes. Unless the Bankruptcy Court orders otherwise, all sales, transfers and assignments of owned and leased property approved by the Bankruptcy Court on or prior to the Effective Date will be deemed to have been in furtherance of or in connection with the Plan.

### 10.     *Section 1145 Exemption*

Pursuant to section 1145(a) of the Bankruptcy Code, neither section 5 of the Securities Act of 1933 nor any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, will apply with respect to any security

25

being offered, sold or transferred under the Plan, including without limitation to the equity interests in Hotel Owner or the equity interests in Venture LLC.

11.  *Corporate Action*

a.  Upon the Effective Date, all matters provided in the Plan that would otherwise require approval of the stockholders, members, managers or directors of the Debtors, including, without limitation, (i) the execution and entry into, and performance under, the Settlement Agreement and all documents and agreements in connection therewith, (ii) the transfer or distribution of the interests in Venture LLC, (iii) the Sale and (iv) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date) will be deemed to have occurred and will be in effect from and after the Effective Date pursuant to the applicable general corporation or limited liability company law of the states in which the Debtors are incorporated, without any requirement of further action by the stockholders or directors of the Debtors.

b.  On or (as applicable) prior to the Effective Date, the appropriate officers, agents or representatives of the Debtors (including, any authorized member, manager, vice-president, president, chief executive officer, treasurer or chief financial officer of any Debtor), as applicable, will be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors, including any agreements, instruments and documents in connection with the Settlement Agreement. The authorizations and approvals contemplated by the Plan will be effective notwithstanding any requirements under nonbankruptcy law.

12.  *Termination of Subordination Rights and Settlement of Related Claims*

The classification and manner of satisfying all Claims and Equity Interests under the Plan take into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise. All subordination rights that a holder of a Claim or Equity Interest may have with respect to any distribution to be made pursuant to the Plan will be discharged and terminated and all actions related to the enforcement of such subordination rights will be permanently enjoined. Accordingly, distributions pursuant to the Plan to holders of Allowed Claims will not be subject to payment to a beneficiary of such terminated subordination rights or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights; provided, however, that nothing contained in the Plan will preclude any Person or entity from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases and other agreements or documents delivered under or in connection with the Plan.

13.  *Compromise and Settlement*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan will constitute a good faith compromise of all Claims and Equity Interests. The entry of the Confirmation

26

Order will constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, including, without limitation, the Settlement Agreement, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Equity Interests.

    I.     Retention of Jurisdiction

On and after the Effective Date, the Bankruptcy Court will retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

a.     to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

b.     to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

c.     to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

d.     to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

e.     to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is party or with respect to which any Debtor may be liable, including, without limitation, any matter relating to the terms and conditions of any such executory contract or unexpired lease as assumed or assigned, or the obligation of any party to perform thereunder, and to hear, determine, and if necessary, liquidate any Claims arising therefrom;

f.     to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

g.     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

h.     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement for this chapter 11 Plan, or any order of the Bankruptcy Court,

including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

i.      to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

j.      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing, provided that, notwithstanding the foregoing, any forum selection provisions in such agreements, instruments, or other documents will be respected;

k.      to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

l.      to hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code;

m.      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

n.      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

o.      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

p.      to enter a final decree closing the Chapter 11 Cases;

q.      to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

r.      to recover all assets of the Debtors and property of the Debtors' estates, wherever located; and

s.      to hear and determine any rights, Claims, or causes of action held by or accruing to the Debtors pursuant to the Confirmation Order, the Bankruptcy Code or any federal statute or legal theory.

J.  Miscellaneous Provisions

1.  *Payment of Statutory Fees*

On the Effective Date, and thereafter as may be required, the Debtors will pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.  *Substantial Consummation*

On the Effective Date, the Plan will be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

3.  *Amendments*

a.  Plan Modifications

The Plan may be amended, modified, or supplemented by the Debtors, with the reasonable consent of DekaBank, Host and USRHC, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, with the reasonable consent of DekaBank, Host and USRHC, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

b.  Other Amendments

Subject to the terms of the Settlement Agreement, prior to the Effective Date, the Debtors, with the reasonable consent of DekaBank, Host and USRHC, may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court.

4.  *Effectuating Documents and Further Transactions*

Each of the officers, managers and members of the Debtors is authorized, in accordance with their respective authority under the resolutions of the applicable board of directors, managers or members or under the organizational documents of the Debtors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

5.  *Revocation, Withdrawal, or Non-Consummation of the Plan*

Subject to the terms of the Settlement Agreement, the Debtors reserve the right, with the reasonable consent of DekaBank, Host and USRHC, to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file other plans. If the Debtors revoke or withdraw the Plan, or if Confirmation Order is not entered or consummation of the Plan does not occur, then (i) the Plan will automatically be deemed withdrawn and null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or

29

agreement executed pursuant to the Plan will be deemed null and void, and (iii) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, will (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

### 6. *Severability*

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, with the reasonable consent of DekaBank, Host and USRHC, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms. No alteration or interpretation of the Plan pursuant to section 12.6 of the Plan will operate to modify or amend the terms and conditions of the Settlement Agreement without the consent of the Settlement Agreement Parties in their sole discretion.

### 7. *Governing Law*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 8. *Time*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 will apply.

### 9. *Binding Effect*

The Plan will be binding on and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and each of their respective successors and assigns, and all other parties-in-interest in the Chapter 11 Cases.

### 10. *Conflicts*

In the event that the provisions of the Disclosure Statement and the provisions of the Plan conflict, the terms of the Plan shall govern.

## VII. CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following is a general summary of certain significant U.S. federal income tax consequences of the implementation of the Plan to the Debtors and holders of certain Claims and Equity Interests. This summary is based the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury

regulations, judicial authorities, published positions of the Internal Revenue Service ("IRS") and other applicable authorities, all as in effect on the date of this document and all of which are subject to change or differing interpretations (possibly with retroactive effect). These authorities are all subject to change at any time by legislative, judicial or administrative action, and such change may be applied retroactively in a manner that could adversely affect holders of Claims or Equity Interests and the Debtors. Due to a lack of definitive judicial or administrative authority or interpretation, the complexity of the application of the Tax Code and Treasury regulations to the implementation of the Plan, the possibility of changes in the law, the differences in the nature of various Claims and Equity Interests and the potential for disputes as to legal and factual matters, the tax consequences discussed below are subject to substantial uncertainties.

The Debtors have not requested a ruling from the IRS or any other tax authority, or an opinion of counsel, with respect to any of the tax aspects of the contemplated transactions, and the discussion below is not binding upon the IRS or such other authorities. Thus, no assurance can be given that the IRS or such other authorities would not assert, or that a court would not sustain, a different position from any discussed herein. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Plan to the Debtors or any holder of a Claim and/or Equity Interest.

*EACH HOLDER IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE UNITED STATES FEDERAL, STATE AND LOCAL AND ANY NON-UNITED STATES TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.*

*TREASURY DEPARTMENT CIRCULAR 230 NOTICE: YOU ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE TAX CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY THE DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) EACH PERSON SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.*

    A.    United States Federal Income Tax Consequences to the Debtors

Both the Debtors and the Mezz 3 Entity are disregarded entities ("Disregarded Entities") for U.S. federal income tax purposes. As more specifically addressed in part II.B above, the Mezz 1 Debtor is 100% owned by the Mezz 2 Debtor which is in turn 100% owned by the Mezz 3 Entity. The Mezz 3 Entity is 100% owned by LEM. Because the Debtors and the Mezz 3 Entity are Disregarded Entities, all of the assets and liabilities of each of the Debtors are treated as being assets and liabilities of LEM. When the owner of a bankrupt Disregarded Entity is not itself in a chapter 11 case, any cancellation of debt income ("COD") attributable to the bankrupt Disregarded Entity should be treated for U.S. federal income tax purposes as COD of its owner. Neither LEM nor the Mezz 3 Entity is a debtor in these Chapter 11 Cases and, therefore, to the extent there is any COD attributable to the Debtors, it should be treated for U.S. federal income tax purposes as COD of LEM. It is likely that the statutory and judicial exceptions to the recognition of COD income will not be available to LEM because LEM is not itself in a chapter 11 case. Therefore, if there is any COD attributable to the Debtors, LEM will likely have taxable income.

B.   United States Federal Income Tax Consequences to Holders of Claims and Equity Interests

All holders of Claims or Equity Interests against the Debtors should consult their tax advisors as to the particular tax consequences to them of the transactions contemplated by the Plan, including the applicability and effect of any state, local or foreign tax laws, and of any change in applicable tax law.

VIII.   FEASIBILITY OF THE PLAN, ACCEPTANCE OF THE PLAN AND THE BEST INTERESTS TEST

A.   Feasibility of the Plan

In connection with confirmation of a plan, section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that confirmation of the plan is not likely to be followed by the liquidation or the need for further financial reorganization, unless the Plan contemplates such liquidation. In the context of a liquidating plan, feasibility is established by demonstrating the debtor's ability to make the payments anticipated in the plan and specifying the timing of the debtor's liquidation. Notably, there is no requirement that such payments will be guaranteed.

The Plan provides for the liquidation of the Debtors by the Sale and transfer of the Hotel Equity to Venture LLC. Specifically, the proceeds realized from the Sale, together with any amounts required from LEM under the LEM Funding Obligations, will fund the distributions and settlements to be made pursuant to the terms of the Plan and the Settlement Agreement. Moreover, the Debtors maintain that, so long as the Settlement Agreement is consummated and the Plan is confirmed, there is a reasonable expectation that the payments required to be made under the Plan will, in fact, be made.

B.   Acceptance of the Plan

As a condition to confirmation, the Bankruptcy Code requires that holders within each class of impaired claims and interests vote to accept the plan, except under certain circumstances. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan if two-thirds in amount actually voting and a majority in number actually voting cast their ballots in favor of acceptance. Under section 1126(d) of the Bankruptcy Code, a class of interests has accepted the plan if holders of such interests holding at least two-thirds in amount actually voting have voted to accept the plan. Holders of claims or interests who fail to vote are not counted as either accepting or rejecting a plan.

C.   Best Interests Test/Liquidation Analysis

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires that a bankruptcy court determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted that plan. The "best interests" test, as set forth in Bankruptcy Code section 1129(a)(7), requires a bankruptcy court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a party who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code. Here, the Debtors believe all creditors and equity holders in both Estates will vote to accept the Plan and therefore, this test will not be applicable. Nevertheless, in all

32

events, implementation of the Plan will, in fact, realize a greater recovery for all holders of Claims and Equity Interests than such holders would recover in a chapter 7 liquidation.

To calculate the probable distribution to members of each impaired class of claims and equity interests if a debtor were liquidated under chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from the disposition of the debtor's assets if its chapter 11 case was converted to a chapter 7 case under the Bankruptcy Code.

Here, the sole asset of the Mezz 1 Debtor's Estate is the Hotel Equity and the sole asset of the Mezz 2 Debtor's Estate is the equity interest in the Mezz 1 Debtor. In a chapter 7 proceeding, the trustee would likely attempt to sell such equity interests on a expedited sale basis, which the Debtors believe would generate substantially less value than the proceeds that would be realized from the Sale. Alternatively, a chapter 7 trustee might simply abandon the equity in the Hotel Owner to DekaBank on the basis that there was no value to creditors over the DekaBank Claim. Under either scenario, a forced sale or an abandonment, no claimant other than DekaBank would realize any recovery on account of its Claim or Equity Interest.

In addition, the costs of liquidation under a chapter 7 proceeding under the Bankruptcy Code, which would include the compensation of a trustee, as well as compensation of counsel and other professionals retained by the trustee, asset disposition expenses, unpaid expenses incurred by the Debtors in their Chapter 11 Cases (such as compensation of attorneys, financial advisors and accountants) to the extent allowed in the chapter 7 cases, litigation costs, and Claims arising from the operations of the Debtors during the pendency of the Chapter 11 Cases, would all further depress any recovery to creditors. In contrast, under the Plan, all of the Debtors' professional fees will be paid by a third party and there will be no additional administrative expenses post-confirmation.

## IX. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtors believe that the Plan affords holders of eligible Claims and Equity Interests the potential for the greatest realization on the Debtors' assets and, therefore, is in the best interests of such holders. If, however, the requisite acceptances are not received, or the requisite acceptances are received, and the Plan is not subsequently confirmed and consummated, the alternatives include: (i) liquidation of the Debtors under chapter 7 of the Bankruptcy Code, or (ii) formulation of an alternative chapter 11 plan or plans.

### A. Liquidation under Chapter 7

If no plan can be confirmed or the Bankruptcy Court determines other cause exists for conversion, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed to liquidate the Debtors' assets for distribution to creditors in accordance with the priorities by the Bankruptcy Code. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective holders of Claims against or Equity Interests in the Debtors.

The Debtors believe that, before creditors received any distributions pursuant to a liquidation under chapter 7, the additional administrative expenses that would be incurred in connection with the appointment of a trustee or trustees and for the attorneys, accountants and other professionals that would be required to assist such trustee(s) would cause a substantial diminution in the value of the Debtors' assets otherwise available to creditors.

33

Moreover, as stated above, the Debtors believe that in all events a chapter 7 liquidation of the Debtors' assets would produce less value to holders of Claims and Equity Interests than that recoverable under the Plan.

B.    Alternative Chapter 11 Plan(s)

If the requisite acceptances are not received, or if the Plan is not confirmed, the Debtors (or, if the Debtors' exclusive periods in which to file and solicit acceptances of a plan have expired or have otherwise been terminated, any other party-in-interest) could attempt to formulate and propose a different plan or plans. Such a plan or plans might involve either a reorganization and continuation of the Debtors' businesses or an orderly liquidation of assets. Even if the Debtors were to propose an alternative plan or plans, the Debtors and their significant creditors have concluded that the transactions contemplated by and the treatment provided under the Plan and the Settlement Agreement will realize a superior recovery for holders of Claims and Equity Interests than the potential recovery that might otherwise be available to such holders under any alternative plan or plans.

If the Plan is not confirmed by the dates set forth in the Settlement Agreement, all parties have reserved all rights and remedies. In particular, DekaBank has indicated it would proceed to trial on its pending motions which, if successful, may result in DekaBank completing the UCC Foreclosure Sale in respect of the equity interests in the Hotel Owner.

X.    CERTAIN FACTORS TO BE CONSIDERED; PLAN RELATED RISK FACTORS

*Holders of Claims and Equity Interests should consider the risks and uncertainties below in making their decisions regarding whether to vote to accept the Plan. The risks and uncertainties described below are not the only ones the Debtors face. Additional risks and uncertainties not presently known to the Debtors, or that the Debtors currently deem immaterial, may also adversely affect recoveries available to holders of Claims and Equity Interests.*

A.    Bankruptcy Proceedings and Debtors' Circumstances

While the Debtors believe that the implementation of a consensual plan of liquidation predicated on the Settlement Agreement will be of short duration and will not be seriously disruptive to the Debtors or to the business of the Hotel Owner, there can be no certainty in this regard. Although the Plan is designed to minimize the length of the Chapter 11 Cases, it is not possible to predict with certainty the duration of the plan process, or even whether the Plan will ultimately be confirmed.

B.    Failure to Confirm the Plan

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, including among other requirements, a finding by the bankruptcy court that: (a) such plan does not "unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes and (b) the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not receive less than the value of distributions such holders would receive if the debtors were liquidated under chapter 7 of the Bankruptcy Code.

Even if the requisite acceptances to confirm the Plan are received, there can be no assurances the Bankruptcy Court will confirm the Plan. A non-accepting holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that the Disclosure Statement, the balloting procedures and voting results are appropriate, the

34

Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting classes. Although the Debtors believe that the Plan will meet such test, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

Confirmation of the Plan is also subject to certain conditions described in the Plan. If the Plan is not confirmed, it is unclear what distributions, if any, holders of Allowed Claims would receive with respect to their Allowed Claims.

    C.    Failure to Consummate the Plan; Risk of Non-Occurrence of the Effective Date

The Settlement Agreement contains various contingencies and requires the Debtors to meet various deadlines. The failure to satisfy such specified contingencies and conditions, or meet the deadlines provided for in the Settlement Agreement, will give the Settlement Agreement Parties the right to terminate the Settlement Agreement. If such conditions and deadlines are not met, and the Settlement Agreement is terminated, the Debtors will not be able to consummate the Plan.

Although the Debtors believe that, if confirmed, the Plan will be consummated quickly, there can be no assurance that all conditions to consummation of the Plan will be timely satisfied, or the Effective Date will, ultimately, occur.

## XI.    THE SOLICITATION; VOTING PROCEDURES

The following briefly summarizes the procedures to accept or reject the Plan. Holders of Claims and Equity Interests are encouraged to review the relevant provisions of the Bankruptcy Code and/or to consult their own attorneys.

    A.    Solicitation

On _____, 2010, the Bankruptcy Court entered an Order (A) Scheduling a Joint Combined Hearing on Disclosure Statement and Confirmation of the Plan and Establishing Procedures for Objecting to Disclosure Statement and Plan; (B) Approving the Form and Notice of Joint Combined Hearing on Disclosure Statement and Confirmation of the Plan; (C) Approving the Solicitation Procedures and Mailing of the Solicitation Package; and (D) Provisionally Approving the Disclosure Statement (the "Plan Confirmation Scheduling Order").

The Plan Confirmation Scheduling Order also approved the forms of Ballots and certain confirmation-related notices, including which materials could be mailed to creditors in respect of solicitation of creditors to accept or reject the Plan (the "Solicitation Package").

The following materials constitute the Solicitation Package:

- the appropriate Ballots and applicable voting instructions;

- a pre-addressed, post pre-paid return envelope; and

- this Disclosure Statement with all Exhibits, including the Plan, and any other supplements or amendments to such documents.

35

Any party who desires additional copies of these documents may request copies from the Solicitation Agent by writing to Potter Anderson & Corroon LLP, Attn: Steven M. Yoder, Esq., Hercules Plaza, 6th Floor, 1313 N. Market Street, Wilmington, Delaware 19899-0951, or by calling (302) 984-6107.

B.    Voting Deadline

The period during which Ballots with respect to the Plan will be accepted by the Debtors (and may be withdrawn or revoked unless the Bankruptcy Court issues an order to the contrary) will terminate at **5:00 p.m. Prevailing Eastern Time on August __, 2010**, unless the Debtors, in their sole discretion, extend the date until which Ballots will be accepted. Except to the extent the Debtors so determine or as permitted by the Bankruptcy Court, Ballots that are received after the Voting Deadline will not be counted or otherwise used by the Debtors in connection with the Debtors' request for confirmation of the Plan (or any permitted modification thereof).

The Debtors reserve the absolute right, at any time or from time to time, to extend the period of time (on a daily basis, if necessary) during which Ballots will be accepted for any reason, including determining whether or not the requisite acceptances have been received, by making a public announcement of such extension no later than the first Business Day next succeeding the previously announced Voting Deadline. The Debtors will give notice of any such extension in a manner deemed reasonable to the Debtors in their discretion. There can be no assurance that the Debtors will exercise their right to extend the solicitation period for the receipt of Ballots.

C.    Voting Procedures

Under the Bankruptcy Code, for purposes of determining whether the requisite acceptances have been received, only holders of impaired claims and equity interests who actually vote will be counted. The failure of a holder to deliver a duly executed Ballot will be deemed to constitute an abstention by such holder with respect to voting on the Plan and such abstentions will not be counted as votes for or against the Plan. Voting instructions are attached to each Ballot.

D.    Miscellaneous

Unless otherwise ordered by the Bankruptcy Court, Ballots that are signed, dated and timely received, but on which a vote to accept or reject the Plan has not been indicated, will not be counted. The Debtors, in their sole discretion, may attempt to contact such voters to cure any such defects in the Ballots.

Except as provided below, unless the Ballot is timely submitted before the Voting Deadline, together with any other documents required by such Ballot, the Debtors may, in their sole discretion, reject such Ballot as invalid, and therefore decline to utilize it in connection with seeking confirmation of the Plan.

If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or another acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, unless otherwise determined by the Debtor, must submit proper evidence satisfactory to the Debtor of authority to so act.

E.    Parties Entitled to Vote

Under section 1124 of the Bankruptcy Code, a class of claims or equity interests is deemed to be "impaired" under a plan unless (i) the plan leaves unaltered the legal, equitable and contractual rights to which such claim or equity interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or equity interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or equity interest as it existed before the default.

In general, a holder of a claim or equity interest may vote to accept or to reject a plan if the claim or equity interest is "allowed," which means generally that no party-in-interest has objected to such claim or equity interest, and the claim or equity interest is impaired by the plan. If, however, the holder of an impaired claim or equity interest will not receive or retain any property under the plan on account of such claim or equity interest, the Bankruptcy Code deems such holder to have rejected the plan, and, accordingly, holders of such claims and equity interests do not actually vote on the plan. If a claim or equity interest is not impaired by the plan, the Bankruptcy Code deems the holder of such claim or equity interest to have accepted the plan and, accordingly, holders of such claims and equity interests are not entitled to vote on the plan.

Classes 2, 3, B and C of the Plan are not impaired. Accordingly, under section 1126(f) of the Bankruptcy Code, all such classes of Claims and Equity Interests are deemed to have accepted the Plan and are not entitled to vote in respect of the Plan.

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Debtors are soliciting acceptances only from holders of Claims and Equity Interests in Classes 1, 4, A and D.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

F.    Waivers of Defects, Irregularities, Etc.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Debtors in their sole discretion, which determination will be final and binding. As indicated in this Section XII, effective withdrawals of Ballots must be delivered to the Solicitation Agent prior to the Voting Deadline. The Debtors reserve the absolute right to contest the validity of any such withdrawal. The Debtors also reserve the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, be unlawful. The Debtors further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. The interpretation (including the Ballot and the respective instructions thereto) by the Debtors, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Bankruptcy Court) determine. Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

37

G.      Withdrawal of Ballots; Revocation

Any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Solicitation Agent at any time prior to the Voting Deadline. A notice of withdrawal, to be valid, must (i) contain the description of the claim(s) to which it relates and the aggregate principal amount represented by such claim(s), (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the claim(s) and possesses the right to withdraw the vote sought to be withdrawn and (iv) be received by the Solicitation Agent in a timely manner. As stated above, the Debtors expressly reserve the absolute right to contest the validity of any such withdrawals of Ballots.

Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of Ballots which is not received in a timely manner by the Solicitation Agent will not be effective to withdraw a previously cast Ballot.

Any party who has previously submitted to the Solicitation Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change his or its vote by submitting to the Solicitation Agent prior to the Voting Deadline a subsequent properly completed Ballot for acceptance or rejection of the Plan. In the case where more than one timely, properly completed Ballot is received, only the Ballot which bears the latest date will be counted for purposes of determining whether the requisite acceptances have been received.

H.      Further Information, Additional Copies

If you have any questions or require further information about the voting procedures or if you wish to obtain an additional copy of the Plan, the Disclosure Statement, or any exhibits to such documents, please contact the Solicitation Agent:

**Potter Anderson & Corroon LLP**
**Attn: Steven M. Yoder, Esq.**
**Hercules Plaza, 6th Floor**
**1313 N. Market Street**
**Wilmington, DE 19899-0951**

I.      Voting Tabulation

The Ballot does not constitute, and shall not be deemed to be, a proof of claim or an assertion or admission of a claim or equity interest. Only holders of claims in the voting classes shall be entitled to vote with regard to such claims.

The Debtors expressly reserve the right to amend from time to time the terms of the Plan (subject to compliance with the requirements of section 1127 of the Bankruptcy Code and the terms of the Plan regarding modifications). The Bankruptcy Code may require the Debtors to disseminate additional solicitation materials if the Debtors make material changes to the terms of the Plan or if the Debtors waive a material condition to Plan confirmation. In that event, the solicitation will be extended to the extent directed by the Bankruptcy Court.

If multiple Ballots are received from the same holder of claims prior to the Voting Deadline, the last Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot. A Ballot that partially rejects and partially accepts the Plan will not be counted.

38

The Debtors will file with the Bankruptcy Court, as soon as reasonable practicable after the Voting Deadline, a voting report (the "Voting Report"). The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting procedures and will provide a tabulation of the votes received.

## XII.   CONFIRMATION PROCEDURES

**The hearing on the adequacy of the Disclosure Statement and confirmation of the Plan will commence on _____, 2010 at _____, Prevailing Eastern Time,** before the Honorable Kevin J. Carey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, at the United States Bankruptcy Court, 824 Market Street, 5th Floor, Courtroom 5, Wilmington, Delaware 19801. The hearing on the Disclosure Statement and Confirmation of the Plan may be adjourned from time to time without further notice except for announcement of the adjourned date.

**The deadline to object to the adequacy of the Disclosure Statement or the Plan is _____, 2010, at 4:00 p.m., Prevailing Eastern Time.** All objections to the adequacy of the Disclosure Statement and/or confirmation of the Plan must be filed with the Bankruptcy Court and served on the Debtors and certain other parties in accordance with the Plan Confirmation Scheduling Order.

---

**THE BANKRUPTCY COURT WILL NOT CONSIDER DISCLOSURE STATEMENT OR PLAN OBJECTIONS UNLESS THEY ARE TIMELY FILED IN COMPLIANCE WITH THE PLAN CONFIRMATION SCHEDULING ORDER AND ANY OTHER APPLICABLE ORDERS ISSUED BY THE BANKRUPTCY COURT.**

---

## XIII.   RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Debtors believe that confirmation and consummation of the Plan is preferable to all other alternatives. Consequently, the Debtors urge all holders of eligible claims to vote to accept the Plan, and to complete and return their Ballots so that they will be received by the Solicitation Agent on or before the Voting Deadline.

Dated: July 14, 2010

HOTELS UNION SQUARE MEZZ 1 LLC; and
HOTELS UNION SQUARE MEZZ 2 LLC

By: */s/ Jay J. Eisner*
Name:  Jay J. Bisner
Title:   Treasurer

40

[THIS PAGE INTENTIONALLY LEFT BLANK]

# EXHIBIT A

[Joint Plan of Reorganization]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| HOTELS UNION SQUARE MEZZ 1 LLC and | : Case No. 10-10971 (KJC) |
| HOTELS UNION SQUARE MEZZ 2 LLC, | : (Jointly Administered) |
| | : |
| Debtors. | : |
| | : |

## JOINT PLAN OF LIQUIDATION
## OF HOTELS UNION SQUARE MEZZ 1 LLC AND
## HOTELS UNION SQUARE MEZZ 2 LLC
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

POTTER ANDERSON & CORROON LLP
Steven M. Yoder, Esq.
Jeremy W. Ryan, Esq.
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
Phone: (302) 984-6000
Facsimile: (302) 658-1192

*Counsel for the Debtors and Debtors in Possession*

Dated: July 14, 2010
Wilmington, Delaware

# TABLE OF CONTENTS

SECTION 1. DEFINITIONS AND RULES OF INTERPRETATION..........................................1

    A.    Definitions...........................................................................................1

SECTION 2. ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS ...............................7

    2.1    Administrative Expense Claims.................................................................7

    2.2    Compensation and Reimbursement Claims...............................................8

    2.3    Priority Tax Claims...................................................................................8

SECTION 3. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS...........................8

SECTION 4. TREATMENT OF CLAIMS AND EQUITY INTERESTS....................................9

    4.1    Mezz 1 Debtor........................................................................................9

        (a)    DekaBank Claim (Class 1)..............................................................9

        (b)    Other Secured Claims against Mezz 1 Debtor (Class 2)..................9

        (c)    General Unsecured Claims against Mezz 1 Debtor (Class 3)........10

        (d)    Equity Interests in Mezz 1 Debtor (Class 4)..................................10

    4.2    Mezz 2 Debtor......................................................................................10

        (a)    USRHC Claim (Class A)................................................................10

        (b)    Other Secured Claims against Mezz 2 Debtor (Class B)................11

        (c)    General Unsecured Claims against Mezz 2 Debtor (Class C)........11

        (d)    Equity Interests in Mezz 2 Debtor (Class D)................................11

SECTION 5. MEANS FOR IMPLEMENTATION......................................................................11

    5.1    Effect of Distribution to Creditors.........................................................11

    5.2    Joint Chapter 11 Plan............................................................................12

    5.3    Settlement Agreement and Sale..............................................................12

    5.4    Liquidation of the Debtors.....................................................................12

    5.5    Cancellation of Agreements and Securities............................................12

| | | |
|---|---|---|
| **5.6** | Directors, Managers and Officers. | 12 |
| **5.7** | Effectuating Documents; Further Transactions. | 13 |
| **5.8** | Sources of Consideration for Plan Distributions. | 13 |
| **5.9** | Sale of Hotel Equity. | 13 |
| **5.10** | Intercompany Claims. | 14 |
| **5.11** | Distribution of Securities and Related Documentation. | 14 |
| SECTION 6. | DISTRIBUTIONS | 14 |
| **6.1** | Distribution Record Date. | 14 |
| **6.2** | Date of Distributions. | 14 |
| **6.3** | Disbursing Agent. | 14 |
| **6.4** | Powers of Disbursing Agent. | 15 |
| **6.5** | Surrender of Securities or Instruments. | 15 |
| **6.6** | Delivery of Distributions. | 15 |
| **6.7** | Manner of Payment Under Plan. | 15 |
| **6.8** | Withholding and Reporting Requirements. | 16 |
| **6.9** | Setoffs. | 16 |
| **6.10** | Distributions After Effective Date. | 16 |
| **6.11** | Allocation of Distributions Between Principal and Interest. | 16 |
| SECTION 7. | PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS | 17 |
| **7.1** | Objections to Claims. | 17 |
| **7.2** | Payments and Distributions with Respect to Disputed Claims. | 17 |
| **7.3** | Estimation of Claims. | 17 |
| **7.4** | Distributions Relating to Disputed Claims. | 17 |
| **7.5** | Preservation of Rights to Settle Claims. | 18 |
| **7.6** | Resolution of Claims Post-Closing of the Chapter 11 Cases. | 18 |

SECTION 8.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................. 18

    **8.1**    General Treatment. ................................................................................................. 18

    **8.2**    Rejection Claims...................................................................................................... 18

    **8.3**    Pre-existing Obligations to the Debtors under Executory Contracts and Unexpired Leases. ...................................................................................................... 19

SECTION 9.  CONDITIONS PRECEDENT....................................................................... 19

    **9.1**    Conditions Precedent to Confirmation. ................................................................ 19

    **9.2**    Conditions Precedent to the Effective Date.......................................................... 19

    **9.3**    Effect of Failure of Conditions to Effective Date................................................ 19

    **9.4**    Waiver of Conditions.............................................................................................. 20

    **9.5**    Effect of Termination of Settlement Agreement. ................................................. 20

SECTION 10. EFFECT OF CONFIRMATION ...................................................................... 20

    **10.1**    Release of Liens...................................................................................................... 20

    **10.2**    Satisfaction of Claims and Termination of Equity Interests................................ 20

    **10.3**    Term of Injunctions or Stays. ............................................................................... 21

    **10.4**    Injunction Against Interference with Plan............................................................ 21

    **10.5**    Releases. .................................................................................................................. 21

    **10.6**    Exculpation.............................................................................................................. 22

    **10.7**    Retention of Causes of Action/Reservation of Rights.......................................... 22

    **10.8**    Solicitation of the Plan. ......................................................................................... 23

    **10.9**    Exemption from Certain Transfer Taxes. .............................................................. 23

    **10.10**  Section 1145 Exemption........................................................................................ 24

    **10.11**  Corporate Action. ................................................................................................... 24

    **10.12**  Termination of Subordination Rights and Settlement of Related Claims. ............ 24

    **10.13**  Compromise and Settlement................................................................................... 25

SECTION 11. RETENTION OF JURISDICTION................................................................... 25

SECTION 12. MISCELLANEOUS PROVISIONS ............................................................................27

    **12.1**    Payment of Statutory Fees. ...............................................................................................27

    **12.2**    Substantial Consummation. ...............................................................................................27

    **12.3**    Amendments. .......................................................................................................................27

    **12.4**    Effectuating Documents and Further Transactions. .......................................................27

    **12.5**    Revocation, Withdrawal, or Non-Consummation of the Plan. ......................................27

    **12.6**    Severability. .........................................................................................................................28

    **12.7**    Governing Law. ...................................................................................................................28

    **12.8**    Time. .....................................................................................................................................28

    **12.9**    Binding Effect. ....................................................................................................................28

    **12.10**  Conflicts. ..............................................................................................................................28

    **12.11**  Notices. .................................................................................................................................29

Hotels Union Square Mezz 1 LLC and Hotels Union Square Mezz 2 LLC, as debtors and debtors in possession in the above-captioned chapter 11 cases propose the following joint chapter 11 Plan of Liquidation pursuant to section 1121 of title 11 of the United States Code.

## SECTION 1.  **DEFINITIONS AND RULES OF INTERPRETATION**

### A.  **Definitions.**

Except as expressly provided or unless the context otherwise requires, capitalized terms not otherwise defined herein shall have the meanings ascribed to them in this Article I. Any term that is used and not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein.  Where the context requires, any definition applies to the plural as well as the singular number:

**1.1**  *Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases allowed under sections 503(b), 507(a)(1), or 1114(e) of the Bankruptcy Code, including, without limitation, (i) any actual, necessary costs and expenses, incurred after the Petition Dates, of preserving the Debtors' estates or operating the Debtors' businesses, (ii) any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Chapter 11 Cases, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, (iii) the compensation and reimbursement of expenses of professionals to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code, and (iv) any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

**1.2**  *Affiliate* has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

**1.3**  *Allowed* means, with reference to a Claim, (1) a Claim against a Debtor that has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) a Claim that has been timely filed and as to which no objection to allowance or request for estimation has been timely interposed and not withdrawn, or (iii) any Claim expressly allowed by a Final Order or hereunder, provided that any Claim that is allowed for the limited purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" for the purpose of Distributions hereunder; and, provided, further, that an "Allowed" Claim shall not include, for purposes of calculating Distributions under the Plan, interest on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code, any applicable Final Order, or as otherwise expressly set forth in this Plan.

**1.4** *Ballot* means the ballots accompanying the Disclosure Statement upon which certain holders of Claims or Equity Interests entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

**1.5** *Bankruptcy Code* means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.6** *Bankruptcy Court* means the United States Bankruptcy Court for the District of Delaware, or any other court with jurisdiction over the Chapter 11 Cases, and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

**1.7** *Bankruptcy Rules* means, collectively, the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

**1.8** *Business Day* means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

**1.9** *Cash* means legal tender of the United States of America and equivalents thereof.

**1.10** *Chapter 11 Cases* means the cases commenced under chapter 11 of the Bankruptcy Code by the Debtors on the Petition Dates in the Bankruptcy Court and being jointly administered with one another under Case No. 10-10971, and the phrase **"Chapter 11 Case"** when used with reference to a particular Debtor means the particular case under chapter 11 of the Bankruptcy Code that such Debtor commenced on the Petition Date with the Bankruptcy Court.

**1.11** *Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code.

**1.12** *Class* means any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a) of the Bankruptcy Code.

**1.13** *Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order.

**1.14** *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.15** *Debtors* means, collectively, Mezz 1 Debtor and Mezz 2 Debtor (each individually a "Debtor," and, when the context so requires, in its capacity as a debtor and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code).

2

**1.16**   *DekaBank* means DekaBank Deutsche Girozentrale, a German banking corporation.

**1.17**   *DekaBank Claim* means all Claims against Mezz 1 Debtor arising under the Mezz 1 Loan and the Mezz 1 Loan Documents.

**1.18**   *Debtors in Possession* means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

**1.19**   *Disbursing Agent* means any entity (including any applicable Debtor if it acts in such capacity) in its capacity as a disbursing agent under section 6.3 hereof.

**1.20**   *Disclosure Statement* means the written disclosure statement (including all schedules thereto or referenced therein) that relates to the Plan, as such disclosure statement may be amended, modified, or supplemented from time to time, all as approved by the Bankruptcy Court.

**1.21**   *Disputed Claim* means any Claim that has not been Allowed, provided that any Claim asserted against the Debtors that has been disallowed or expunged by the Bankruptcy Court or withdrawn by the entity asserting such Claim shall, at that point, no longer be a Claim against the Debtors.

**1.22**   *Effective Date* means the Business Day selected by the Debtors on or after which all of the conditions to the consummation of the Plan set forth in Section 9.2 of the Plan have been satisfied or waived as provided in Section 9.4 of the Plan.

**1.23**   *Equity Interest* means the legal, equitable, contractual and other rights of any Person with respect to the membership interests, common stock or any other equity securities of, or ownership interests in, each of the Debtors.

**1.24**   *Escrow Agent* means Land Services USA, Inc., as Escrow Agent under the Settlement Agreement.

**1.25**   *Estates* means the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code.

**1.26**   *Final Order* means an order or judgment of the Bankruptcy Court entered by the clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, no portion of which has been reversed, vacated, or stayed and as to which (I) the time to appeal, petition for *certiorari,* or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari,* or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari,* new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion

3

under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

**1.27** *General Unsecured Claim* means any Claim other than the DekaBank Claim, the USRHC Claim, Other Secured Claim or a claim entitled to priority under section 507 of the Bankruptcy Code, including any claims based on rejection of contracts, litigation claimants to the extent not covered by insurance and other general unsecured claimants.

**1.28** *Host* means Rockledge Hotel Properties, Inc., a Delaware corporation.

**1.29** *Hotel* means the W Hotel - Union Square, located at 201 Park Avenue South, New York, New York.

**1.30** *Hotel Equity* means all of the equity ownership interests in the Hotel Owner.

**1.31** *Hotel Owner* means Hotels Union Square LLC, a Delaware limited liability company.

**1.32** *Impaired* means, with reference to a Claim or Equity Interest, that the treatment of such Claim or Equity Interest under the Plan does not satisfy the requirements specified in either subsection 1124(1) or 1124(2) of the Bankruptcy Code.

**1.33** *Installment Note* means the Promissory Note to be given by Venture LLC to a nominee of LEM as provided for in the Settlement Agreement.

**1.34** *Intercompany Claim* means (i) any account reflecting intercompany book entries by or against any Debtor with respect to any Affiliate, (ii) any Claim that is not reflected in such book entries and is held by or against any Debtor with respect to any Affiliate or (iii) Claims arising under any contract or other agreement between any Debtor and its Affiliate.

**1.35** *Istithmar Guarantor* means Istithmar Building FZE, a Jebel Ali Free Zone establishment incorporated in Dubai under Implementing Regulations 1/92 issued under Emirate of Dubai Law 9 of 1992.

**1.36** *Istithmar Interest* means the membership interest of USRHC in the Venture as described in the Venture Operating Agreement.

**1.37** *LEM* means 201 Park Avenue South PEH L.L.C., a Delaware limited liability company.

**1.38** *LEM Funding Obligations* means the obligations of LEM to fund any amounts required to satisfy any valid Administrative Expense Claims, Priority Tax Claims, Other Secured Claims and General Unsecured Claims, subject to any right of LEM to reimbursement under the terms of the Settlement Agreement.

4

**1.39** *Mezz 1 Collateral* means the Mezz 1 Debtor's ownership interest in the Hotel Owner as pledged to DekaBank.

**1.40** *Mezz 1 Debtor* means Hotels Union Square Mezz 1 LLC, a Delaware limited liability company.

**1.41** *Mezz 1 Loan* means that certain loan, held by DekaBank, to Mezz 1 Debtor in the original principal amount of $60,000,000, secured by the Mezz 1 Collateral.

**1.42** *Mezz 1 Loan Documents* means all documents evidencing and/or securing the Mezz 1 Loan.

**1.43** *Mezz 1 Petition Date* means March 23, 2010.

**1.44** *Mezz 2 Collateral* means Mezz 2 Debtor's ownership interest in Mezz 1 Debtor as pledged to USRHC.

**1.45** *Mezz 2 Debtor* means Hotels Union Square Mezz 2 LLC, a Delaware limited liability company.

**1.46** *Mezz 2 Loan* means that certain loan, held by USRHC, to Mezz 2 Debtor in the original principal amount of $37,000,000, secured by the Mezz 2 Collateral.

**1.47** *Mezz 2 Loan Documents* means all documents evidencing and/or securing the Mezz 2 Loan.

**1.48** *Mezz 2 Petition Date* means March 25, 2010.

**1.49** *Mezz 3 Borrower* means Istithmar Hotels Union Square Mezz 3 LLC, a Delaware limited liability company.

**1.50** *Mezz 3 Collateral* means Mezz 3 Borrower's ownership interest in Mezz 2 Debtor.

**1.51** *Mezz 3 Loan* means that certain loan, held by LEM, to Mezz 3 Borrower in the original principal amount of $20,000,000, secured by the Mezz 3 Collateral.

**1.52** *Mezz 3 Loan Documents* means all documents evidencing and/or securing the Mezz 3 Loan.

**1.53** *Other Secured Claim* means a Claim, the amount of which (i) has been determined by a Final Order to be secured pursuant to section 506(a) and, if applicable, section 1111 of the Bankruptcy Code or (ii) in the absence of such Final Order, has been agreed by the Debtors to be secured (as set forth in the Plan or otherwise), other than the DekaBank Claim and the USRHC Claim.

**1.54** *Outside Date* means September 15, 2010, or such later date as all Settlement Agreement Parties may agree to in writing.

5

**1.55** *Person* means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

**1.56** *Petition Date* or *Petition Dates* means, individually or collectively, the Mezz 1 Petition Date and/or the Mezz 2 Petition Date, as applicable.

**1.57** *Plan* or *Plan of Liquidation* means this joint chapter 11 plan of liquidation, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.58** *Plan Supplement* means the compilation of documents, including any exhibits to the Plan not included herewith, that the Debtors may file with the Bankruptcy Court on or before the date that is three (3) Business Days prior to the commencement of the hearing to confirm the Plan.

**1.59** *Priority Tax Claim* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code that is due and payable on or before the Effective Date. Any Claims asserted by a governmental unit on account of penalties shall not be Priority Tax Claims.

**1.60** *Protective Advances* means funds advanced by DekaBank after March 24, 2010 in accordance with the Mezz 1 Loan Documents.

**1.61** *Released Parties* means (i) each Debtor, (ii) each of the Settlement Agreement Parties, (iii) Venture LLC and (iv) with respect to each of the forgoing, each of their respective past, present, or future parent corporations, subsidiaries, affiliates, officers, directors, owners, stockholders, members, partners, attorneys, trustees, employees, agents, predecessors, successors, heirs, assigns, administrators, executors, and personal representatives, and others within or subject to their control.

**1.62** *Sale* means the sale of the Hotel Equity, as set forth in Section 5.3 hereof.

**1.63** *Sale Documents* shall have the meaning set forth in Section 5.9 hereof.

**1.64** *Schedules* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date.

**1.65** *Settlement Agreement* means that certain Settlement Agreement, dated as of July 14, 2010, by and among Hotel Owner, Mezz 1 Debtor, Mezz 2 Debtor, LEM, Mezz 3 Borrower, USRHC, Istithmar Guarantor, DekaBank, Host Hotels & Resorts L.P., Host and Escrow Agent.

**1.66** *Settlement Agreement Parties* means each party to the Settlement Agreement other than the Escrow Agent.

6

**1.67** *Solicitation Agent* means the Debtors, or any Person designated by the Debtors to serve as a solicitation agent under the Plan.

**1.68** *Tax Code* means the Internal Revenue Code of 1986, as amended from time to time, and the Treasury regulations promulgated thereunder.

**1.69** *Unimpaired* means, with reference to a Claim or Equity Interest, that the treatment of such Claim or Equity Interest under the Plan satisfies the requirements specified in either subsection 1124(1) or 1124(2) of the Bankruptcy Code, Rules of Interpretation; Application of Definitions and Rules of Construction.

**1.70** *USRHC* means Union Square Real Holding Corporation, an exempted company incorporated in the Cayman Islands.

**1.71** *USRHC Claim* means all Claims against Mezz 2 Debtor arising under the Mezz 2 Loan and the Mezz 2 Loan Documents.

**1.72** *Venture LLC* means the Delaware limited liability company to be formed on or about the Effective Date, which shall acquire the Hotel Equity pursuant to the Sale.

**1.73** *Venture Operating Agreement* means the limited liability company agreement for Venture LLC.

**1.74** *Voting Deadline* means **5:00 P.M. Prevailing Eastern Time on August __, 2010.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## SECTION 2. ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

### 2.1 *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, the Debtors, or LEM on behalf of the Debtors pursuant to the LEM Funding Obligations, shall pay to such holder Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date or (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes Allowed; *provided, however,* that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, or liabilities arising under loans, advances, or other financial accommodations, made to or other obligations incurred by the Debtors, as debtors in possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtors, or by

7

LEM on behalf of the Debtors pursuant to the LEM Funding Obligations, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

### 2.2 *Compensation and Reimbursement Claims.*

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, (ii) shall be paid in full from the Debtors' Cash on hand, or by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations, in such amounts as are allowed by the Bankruptcy Court (A) on the later of (x) the Effective Date, or (y) within five (5) Business Days after the date on which the order approving such Allowed Administrative Expense Claim is entered, or (B) on such other terms as may be mutually agreed on between the holder of such an Allowed Administrative Expense Claim and the Debtors. The Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3 *Priority Tax Claims.*

The Debtors do not believe that there are any Priority Tax Claims against the Debtors' Estates. To the extent that any valid Priority Tax Claims are filed, they will be paid by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the (a) Effective Date or (b) first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

## SECTION 3. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following table designates the Classes of Claims against and Equity Interests in the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan, and (iii) deemed to accept or reject the Plan. A Claim or Equity Interest is designated in a particular class only to the extent it falls within the description of that class, and is classified in any other class to the extent that a portion thereof falls within the description of such other class.

8

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| **MEZZ 1 DEBTOR** | | | |
| Mezz 1 Debtor Class 1 | DekaBank Claim | Impaired | Yes |
| Mezz 1 Debtor Class 2 | Other Secured Claims against Mezz 1 Debtor | Unimpaired | No (deemed to accept) |
| Mezz 1 Debtor Class 3 | General Unsecured Claims against Mezz 1 Debtor | Unimpaired | No (deemed to accept) |
| Mezz 1 Debtor Class 4 | Equity Interests in Mezz 1 Debtor | Impaired | Yes |
| **MEZZ 2 DEBTOR** | | | |
| Mezz 2 Debtor Class A | USRHC Claim | Impaired | Yes |
| Mezz 2 Debtor Class B | Other Secured Claims against Mezz 2 Debtor | Unimpaired | No (deemed to accept) |
| Mezz 2 Debtor Class C | General Unsecured Claims against Mezz 2 Debtor | Unimpaired | No (deemed to accept) |
| Mezz 2 Debtor Class D | Equity Interests in Mezz 2 Debtor | Impaired | Yes |

## SECTION 4. TREATMENT OF CLAIMS AND EQUITY INTERESTS

Except as otherwise specified in the Plan, all distributions will be made on the Effective Date or as soon thereafter as practical.

### 4.1 *Mezz 1 Debtor*

#### (a) DekaBank Claim (Class 1).

The Dekabank Claim shall be allowed in the amount of the proof of claim filed by DekaBank. On the Effective Date, in full satisfaction, settlement, release, and discharge of, and in exchange for such Class 1 Claim, based on the agreements and the Settlement Agreement implemented in connection with the Plan, including the release of the Mezz 1 Collateral, the holder of the Class 1 Claim shall receive (i) Cash in the amount of $61 million (which is the same amount in the purchase contract for its UCC sale if that had been held), (ii) Cash in the amount of the Protective Advances made by the holder of the Class 1 Claim after March 24, 2010, if any, and (iii) the releases and indemnities under the Plan, the Settlement Agreement and related documents.

#### (b) Other Secured Claims against Mezz 1 Debtor (Class 2).

Each holder of a valid Other Secured Claim against the Mezz 1 Debtor shall receive, in full satisfaction, settlement, release and discharge of and in exchange for, such Other Secured Claim, (i) Cash equal to the value of its Other Secured Claim, or (ii) such other less

9

favorable treatment to which LEM and such holder shall have agreed upon in writing. Notwithstanding the foregoing, any Claim arising as a result of a tax lien that would otherwise be an Other Secured Claim shall be paid in accordance with Section 2.3 of the Plan.

The Debtors do not believe that there are any Other Secured Claims against the Debtors' Estates and that any Claim which asserted secured status would likely be junior to DekaBank's lien on the Mezz 1 Collateral and thus would be treated as a Mezz 1 Debtor - Class 3 Claim. To the extent that any valid Other Secured Claims are filed, they will be paid by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations in accordance with Section 5.8 of the Plan.

### (c) General Unsecured Claims against Mezz 1 Debtor (Class 3).

In full satisfaction, settlement, release, and discharge of, and in exchange for such Class 3 Claim, each holder of a valid Class 3 Claim shall be paid in full in Cash on the unpaid portion of such General Unsecured Claim on the latest of (i) the Effective Date (or as soon thereafter as reasonably practicable), (ii) the date on which such Claim would be paid in the ordinary course of business, or (iii) as otherwise agreed to by LEM and the holder of such Claim.

The Debtors do not believe that there are any General Unsecured Claims against the Debtors' Estates. To the extent that any valid General Unsecured Claims are filed, they will be paid by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations in accordance with Section 5.8 of the Plan.

### (d) Equity Interests in Mezz 1 Debtor (Class 4).

On the Effective Date, based on the agreements and the Settlement Agreement implemented in connection with the Plan, the holder of Equity Interests in Class 4 shall receive the consideration set forth below under Sections 4.2(a) and 4.2(d), which shall be directly distributed to such holders as set forth below. The Equity Interests in Mezz 1 Debtor shall be cancelled as of the Effective Date.

### 4.2 *Mezz 2 Debtor*

### (a) USRHC Claim (Class A).

The USRHC Claim shall be allowed in the amount of $37,000,000. On the Effective Date, in full satisfaction, settlement, release, and discharge of, and in exchange for such Class A Claim, based on the agreements and the Settlement Agreement implemented in connection with the Plan, including, but not limited to, the agreement of the holder of the Class A Claim to release the Mezz 2 Collateral, the holder of the Class A Claim or its nominee shall receive (i) the right to purchase an interest in Venture LLC as set forth in the Settlement Agreement, (ii) the Debtors' agreement as part of the settlement under the Plan and the Settlement Agreement to release all claims challenging that USRHC is the rightful present holder of the Mezz 2 Loan, and (iii) the releases and indemnities under the Plan, the Settlement Agreement and related documents. The Schedules of Mezz 2 Debtor shall be deemed to be amended as of the Effective Date to replace Sandelman Partners CRE CDO I, Ltd. with USRHC on Schedule D thereof.

10

### (b) Other Secured Claims against Mezz 2 Debtor (Class B).

Each holder of a valid Other Secured Claim against the Mezz 2 Debtor shall receive, in full satisfaction, settlement, release and discharge of and in exchange for, such Other Secured Claim, (i) Cash equal to the value of its Other Secured Claim, or (ii) such other less favorable treatment to which LEM and such holder shall have agreed upon in writing. Notwithstanding the foregoing, any Claim arising as a result of a tax lien that would otherwise be an Other Secured Claim shall be paid in accordance with Section 2.3 of the Plan.

The Debtors do not believe that there are any Other Secured Claims against the Debtors' Estates and that any Claim which asserted secured status would likely be junior to USRHC's lien on the Mezz 2 Collateral and thus would be treated as a Mezz 2 Debtor - Class 3 Claim. To the extent that any valid Other Secured Claims are filed, they will be paid by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations in accordance with Section 5.8 of the Plan.

### (c) General Unsecured Claims against Mezz 2 Debtor (Class C).

In full satisfaction, settlement, release, and discharge of, and in exchange for such Class C Claim, each holder of a valid Class C Claim shall be paid in full in Cash on the unpaid portion of such General Unsecured Claim on the latest of (i) the Effective Date (or as soon thereafter as reasonably practicable), (ii) the date on which such Claim would be paid in the ordinary course of business, or (iii) as otherwise agreed to by LEM and the holder of such Claim.

The Debtors do not believe that there are any General Unsecured Claims against the Debtors' Estates. To the extent that any valid General Unsecured Claims are filed, they will be paid by LEM on behalf of the Debtors pursuant to the LEM Funding Obligations in accordance with Section 5.8 of the Plan.

### (d) Equity Interests in Mezz 2 Debtor (Class D).

On the Effective Date, based on the agreements and the Settlement Agreement implemented in connection with the Plan, the holder of Equity Interests in Class D shall receive for the benefit of its nomines (i) a cash payment in the amount of $9,250,000 and the Installment Note as set forth in the Settlement Agreement, which are being funded by Venture LLC and (ii) the releases and indemnities under the Plan, the Settlement Agreement and related documents. The Equity Interests in Mezz 2 Debtor shall be cancelled as of the Effective Date.

## SECTION 5. MEANS FOR IMPLEMENTATION

### 5.1 *Effect of Distribution to Creditors.*

Except as specifically provided herein, all Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final, and no Plan distribution to the holder of a Claim in one Class shall be subject to being shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, or other similar inter-

11

creditor arrangement, all of which are being cancelled and released without giving rise to any damages or claims against the Debtors.

### 5.2    *Joint Chapter 11 Plan.*

The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor. The Debtors' estates shall be consolidated for procedural purposes only and, for the avoidance of doubt, shall not be substantively consolidated.

### 5.3    *Settlement Agreement and Sale.*

Pursuant to the terms and conditions of the Settlement Agreement, which the Debtors shall file with the Court under seal, Mezz 1 Debtor has agreed to sell the Hotel Equity to Venture LLC (the "Sale") upon the Effective Date, and shall thereupon apply the proceeds of such Sale on account of the distributions to be made under the Plan. The Effective Date shall occur upon the Closing, as defined and provided for under the Settlement Agreement.

### 5.4    *Liquidation of the Debtors.*

(a)    The Debtors shall continue to operate as Debtors in Possession during the period from the Confirmation Date to the Effective Date. Each of the Debtors shall be deemed to have been liquidated as of the Effective Date, and all Equity Interests in each Debtor shall automatically be canceled and extinguished as of the Effective Date without the need for any further action by the Court or any Entity.

(b)    Notwithstanding the foregoing, as soon as practicable after the Effective Date, each of the Debtors shall file its certificate of dissolution, together with all other necessary corporate documents, to effect its dissolution under the applicable laws of the state of Delaware. The filing by each Debtor of its certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by any members, stockholders, managers or the board of directors of each such Debtor.

### 5.5    *Cancellation of Agreements and Securities.*

Except (i) for purposes of evidencing a right to distributions under the Plan, or (ii) otherwise as provided herein, all the agreements and other documents evidencing the Claims, Equity Interests, or rights of any holder of a Claim or Equity Interests Impaired under the Plan shall be cancelled on the Effective Date.

### 5.6    *Directors, Managers and Officers.*

On the Effective Date, the authority, power and incumbency of the persons then acting as directors, managers and officers of the Debtors shall be terminated and such directors, managers and officers shall be deemed to have resigned or to have been removed without cause, *provided, however,* that the Debtors shall retain at least one acting officer for the purposes of complying with Section 5.4.

12

### 5.7 *Effectuating Documents; Further Transactions.*

The managers, chairman of the board of directors, president, chief financial officer, any executive vice-president or senior vice-president, or any other appropriate officer, representative or agent of each Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary, assistant secretary, manager or similar officer of the appropriate Debtor shall be authorized to certify or attest to any of the foregoing actions.

### 5.8 *Sources of Consideration for Plan Distributions.*

Except as otherwise provided in the Plan or the Confirmation Order, the consideration necessary for the Debtors to make payments pursuant to the Plan shall be obtained (i) from the purchase price paid pursuant to the Settlement Agreement by Venture LLC to Mezz 1 Borrower for the Hotel Equity and (ii) to the extent provided herein, from funds paid by LEM under the LEM Funding Obligation. The Debtors do not believe there are any Priority Tax Claims, Other Secured Claims or General Unsecured Claims against the Debtors. In this regard, to the extent that any such Claims, or any Administrative Expense Claims of the Debtors, are determined valid and payable by the Debtors, LEM has agreed to pay such Claims pursuant to the LEM Funding Obligations.

### 5.9 *Sale of Hotel Equity.*

On the Effective Date, the Debtors are authorized to complete the Sale, and are authorized to execute, deliver, file, record and issue all agreements and other related documents necessary or advisable to effectuate the Sale (collectively, the *"Sale Documents"*), in each case, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by the Settlement Agreement). Upon the effectiveness of the Sale in accordance with the terms of the Sale Documents, (i) the Debtors are authorized to perform their obligations thereunder including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages or indemnities, (ii) the Sale Documents shall constitute the legal, valid and binding obligations of the Debtors which are parties thereto, enforceable in accordance with their respective terms, and (iii) no obligation, payment, transfer or grant of security under the Sale Documents shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff or counterclaim. Confirmation of the Plan shall be deemed approval of the Sale (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) free and clear of all Claims, liens, encumbrances, charges and other interests and authorization for the Debtors to enter into and execute the Sale Documents.

### 5.10   *Intercompany Claims.*

On the Effective Date, any Intercompany Claims of a Debtor against the other Debtor and/or their respective Affiliates shall be cancelled and discharged.

### 5.11   *Distribution of Securities and Related Documentation.*

On, or as soon as reasonably practicable after, the Effective Date, the interests in Venture LLC, rights to purchase interests in Venture LLC and any and all other securities, notes, instruments, certificates and other documents or agreements required to be issued, executed or delivered pursuant to the Plan or the Settlement Agreement shall be directly delivered by Venture LLC to the recipients thereof in accordance with the terms and conditions thereof, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person. All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, and any other agreement or document related to or entered into in connection with same, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).

## SECTION 6.   **DISTRIBUTIONS**

### 6.1   *Distribution Record Date.*

At the close of business on the Confirmation Date, the transfer ledgers for holders of the Classes of Claims or Equity Interests maintained by the Debtors shall be closed, and there shall be no further changes in the record holders of such debt. The Debtors and the Disbursing Agent, if any, shall have no obligation to recognize any transfer of any such Claims or Equity Interests occurring after the Confirmation Date and shall be entitled instead to recognize and deal for all purposes under the Plan with only those record holders listed on the transfer ledgers as of the close of business on the Confirmation Date.

### 6.2   *Date of Distributions.*

Except as otherwise provided herein, distributions and deliveries under the Plan with respect to Allowed Claims or Claims deemed valid for purposes of this Plan shall be made on the Effective Date or as soon thereafter as is practicable. In the event that any payment or act under the Plan is required, to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.3   *Disbursing Agent.*

The Disbursing Agent shall make all distributions required under the Plan. If the Disbursing Agent is an independent third party designated by the Debtors to serve in such

14

capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Debtors on terms acceptable to the Debtors. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Debtors.

### 6.4 *Powers of Disbursing Agent.*

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder, (ii) make all distributions contemplated hereby, and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court or pursuant to the Plan.

### 6.5 *Surrender of Securities or Instruments.*

As a condition to receiving any distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any holder of such instrument or note that fails to (i) surrender such instrument or note, or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any distribution hereunder. Any distribution so forfeited shall become property of the Debtors.

### 6.6 *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, or as otherwise provided in the Plan, all distributions to any holder of an Allowed Claim or any Claim deemed valid for purposes of the Plan, shall be made to the Disbursing Agent, who shall transmit such distribution to the last known address of the applicable holders of such Claims. In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date. After such date, all unclaimed property or interest in property shall revert to the Debtors, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 6.7 *Manner of Payment Under Plan.*

At the option of the Debtors, any Cash payment to be made under the Plan may be made by a check, wire transfer, or such other commercially reasonable manner as the payor shall determine in its sole discretion, or as otherwise required or provided in applicable agreements.

15

### 6.8 *Withholding and Reporting Requirements.*

In connection with the Plan and all distributions thereunder, the Disbursing Agent shall, to the extent applicable as determined in its sole discretion, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements. All persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provisions of the Plan to the contrary, (a) each holder of an Allowed Claim or any Claim deemed valid for purposes of the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distributions, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Disbursing Agent for the payment and satisfaction of such tax obligations. Any Cash, interests in Venture LLC, other agreements and document and/or other consideration or property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an unclaimed distribution pursuant to Section 6.6 herein. Any party issuing any instruments or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

### 6.9 *Setoffs.*

The Debtors may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against the holder of such Claim. Nothing in the Plan shall be deemed to expand rights to setoff under applicable non-bankruptcy law. Notwithstanding the foregoing, the Debtors shall be deemed to waive and shall have no right of setoff or recoupment against the holders of the DekaBank Claim and the USRHC Claim.

### 6.10 *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims or are otherwise deemed to be valid Claims pursuant to the Plan shall be deemed to have been made on the Effective Date.

### 6.11 *Allocation of Distributions Between Principal and Interest.*

To the extent that any Allowed Claim or Claim otherwise deemed to be valid pursuant to the Plan entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount

16

(as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

## SECTION 7.  PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

### 7.1  *Objections to Claims.*

During the pendency of the Chapter 11 Cases, the Debtors or LEM shall be entitled to object to Claims other than the DekaBank Claim and the USRHC Claim. Any objections to Claims shall be served and filed on or before the later of (i) one hundred twenty (120) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above.

### 7.2  *Payments and Distributions with Respect to Disputed Claims.*

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or is otherwise determined to be a valid Claim for purposes of the Plan.

### 7.3  *Estimation of Claims.*

The Debtors or LEM may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or LEM may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 7.4  *Distributions Relating to Disputed Claims.*

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim, the property distributable to such holder with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed.

17

### 7.5    *Preservation of Rights to Settle Claims.*

Except as otherwise provided herein, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any Person or entity without the approval of the Bankruptcy Court, subject to the terms of Section 7.1 hereof, the Confirmation Order and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Debtors or their successor(s) may pursue such retained Claims, rights, or causes of action, suits, or proceedings, as appropriate, in accordance with the best interests of the Debtors or their successor(s) who hold such rights.

### 7.6    *Resolution of Claims Post-Closing of the Chapter 11 Cases.*

Anything herein to the contrary notwithstanding, from and after the closing of the Chapter 11 Cases, LEM shall be entitled to resolve any Claims in such manner and in any court of competent jurisdiction, as LEM may elect in its sole discretion.

## SECTION 8.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1    *General Treatment.*

Except as otherwise provided herein, the Debtors do not believe there are any executory contracts or unexpired leases to which any of the Debtors are a party. Out of an abundance of caution, as of the Effective Date, to the extent there are any executory contracts or unexpired leases, such executory contracts and unexpired leases to which any of the Debtors are parties are hereby rejected.

### 8.2    *Rejection Claims.*

In the event that a claimant asserts it was a party to an executory contract or unexpired lease with the Debtors which was rejected pursuant to Section 8.1 above, and such rejection results in damages to the other party or parties to such contract or lease, a Claim for such damages, shall be forever barred and shall not be enforceable against the Debtors, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served on counsel for the Debtors on or before the date that is thirty (30) days after the Effective Date. Any claim arising from the rejection of any executory contract or unexpired lease shall be considered a General Unsecured Claim, and subject to allowance, paid in accordance with Sections 4.1(c) or 4.2(c), as applicable. For the avoidance of doubt, each of the Mezz 1 Loan Documents and the Mezz 2 Loan Documents are not executory contracts and in any event are being released and terminated pursuant to the Plan and the holders thereof are receiving the applicable treatment under the Plan and shall not be entitled to any further damages or Claims, including rejection claims, as a result of such release and termination.

### 8.3 *Pre-existing Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection or repudiation of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any nonbankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors from counterparties to rejected or repudiated executory contracts.

## SECTION 9. **CONDITIONS PRECEDENT**

### 9.1 *Conditions Precedent to Confirmation.*

The confirmation of the Plan is subject to the satisfaction or waiver of the following conditions precedent:

(a) the Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, DekaBank, Host and USRHC; and

(b) the Settlement Agreement shall not have been terminated.

### 9.2 *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the satisfaction or waiver of the following conditions precedent:

(a) the Confirmation Order shall be a Final Order in form and substance reasonably satisfactory to the Debtors, DekaBank, Host and USRHC;

(b) all other actions, documents and agreements necessary to implement the Plan shall have been effectuated or executed; and

(c) the conditions to closing set forth in the Settlement Agreement shall have been satisfied or waived in accordance with the terms thereof, other than those conditions to be satisfied simultaneously with the Effective Date.

### 9.3 *Effect of Failure of Conditions to Effective Date.*

If the Settlement Agreement is terminated in accordance with its terms after the Confirmation Date or the Effective Date has not occurred by the Outside Date, then (i) the Confirmation Order shall be deemed vacated without further order of the Bankruptcy Court, (ii) no distributions under the Plan shall be made, (iii) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) all the Debtors' obligations with respect to the Claims and the Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or

19

against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

### 9.4 *Waiver of Conditions.*

Each of the conditions set forth in Sections 9.1 and 9.2 may be waived in whole or in part by the Debtors, with the consent of DekaBank, Host and USRHC in their sole discretion, without any notice to other parties in interest or the Bankruptcy Court and without a hearing.

### 9.5 *Effect of Termination of Settlement Agreement.*

Upon the termination of the Settlement Agreement at any time, (i) the Plan shall automatically be deemed withdrawn and null and void, (ii) all votes cast in respect of the Plan shall automatically be null and void and deemed withdrawn, and (iii) the Debtors and all holders of Claims and Equity Interests shall be restored as provided for in the Settlement Agreement, and (iv) all the Debtors' obligations with respect to the Claims and the Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

## SECTION 10. EFFECT OF CONFIRMATION

### 10.1 *Release of Liens.*

On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors.

### 10.2 *Satisfaction of Claims and Termination of Equity Interests.*

Upon the Effective Date and in consideration of the rights afforded herein and the payments and distributions to be made hereunder, except as otherwise expressly provided herein or in the Confirmation Order, each holder (as well as any trustees and agents on behalf of each holder) of a Claim against the Debtors or Equity Interest and any affiliate of such holder shall be deemed to have forever waived and released the Debtors to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities of any kind, nature or description that arose prior to the Effective Date. On the Effective Date, all holders of such Claims and Equity Interests shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such released and satisfied Claim against the Debtors or any of their assets or properties, or the terminated Equity Interests based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

Except as otherwise provided herein or in the Confirmation Order, all persons or entities who have held, now hold or may hold Claims against any of the Debtors or Equity

20

Interests and all other parties in interest, along with their respective present and former employees, agents, officers, directors, principals and affiliates, are permanently enjoined from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to such Claim or Equity Interest against the Debtors, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors with respect to such Claim or Equity Interest, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors with respect to such Claim or Equity Interest, or (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligations due from Debtors, with respect to such Claim or Equity Interest. Such injunction shall extend to any successors of the Debtors and their respective properties and interest in properties.

### 10.3 *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 10.4 *Injunction Against Interference with Plan.*

On the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties-in-interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

### 10.5 *Releases.*

**(a)      As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, (i) the Debtors and any person seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor to the Debtors or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, (ii) each holder of a Claim or Equity Interest that votes to accept the Plan and (iii) each of the Settlement Agreement Parties ((i)-(iii) collectively, the "Releasing Parties") shall be deemed to unconditionally, forever release, waive, and discharge each Released Party, from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever in connection with or related in any way to the Debtors, the operation of the Debtors' businesses, the incurrence by the Debtors of any indebtedness or the use of proceeds thereof, the Chapter 11 Cases, and the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; *provided, however,* that nothing in this Section 10.5 shall be deemed to waive or release the rights of the Settlement Agreement Parties to enforce the Settlement Agreement or the Plan and the**

21

contracts, instruments, indentures, and other agreements or documents delivered thereunder or in connection therewith.

(b)    Without limiting the generality of the foregoing, as of the Effective Date, the Debtors shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 506(c), 510 545, 546, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtors and/or which the Debtors could have prosecuted as debtors or debtors in possession against the other Released Parties, whether brought under the Bankruptcy Code or other applicable law.

(c)    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Section 10.5 pursuant to Bankruptcy Rule 9019 and its finding that they are: (i) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and causes of action thereby released; (ii) in the best interests of the Debtors and all holders of Claims; (iii) fair, equitable and reasonable; (iv) approved after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any Claim or cause of action thereby released.

10.6    *Exculpation.*

Notwithstanding anything provided herein, as of the Effective Date and subject to the occurrence of the Effective Date, the following parties, entities, and individuals shall have no liability for any action or failure to act with respect to formulation, negotiation, preparation, confirmation, or consummation of the Plan or the administration of the Chapter 11 Cases (other than liability determined by a final order of a court of competent jurisdiction for actions or failure to act amounting to willful misconduct, intentional fraud, or criminal conduct arising out of the Chapter 11 Cases or any liability arising out of an express contractual obligation)): (i) the Debtors, (ii) the Settlement Agreement Parties, and (iii) with respect to each of the forgoing, each of their respective direct or indirect subsidiaries, current and former officers and directors, managers, members, employees, agents, representatives, financial advisors, professionals, accountants, and attorneys, and each of their predecessors, successors, and assigns. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence or willful misconduct.

10.7    *Retention of Causes of Action/Reservation of Rights.*

(a)    Except with respect to the releases and exculpation provided hereunder, the Debtors shall retain all causes of action, Claims, rights of setoff or recoupment, rights under the Bankruptcy Code, including, without limitation, the right to require the turnover of property of the Debtors' estates, or any applicable non-bankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their

22

officers, directors, or representatives; and (ii) the turnover of any property of the Debtors' estates.

(b)     Nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Debtors shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

(c)     Nothing in clauses (a) and (b) of this Section 10.7 shall be deemed to limit or otherwise modify Section 10.5 or Section 10.6 hereof.

**10.8    *Solicitation of the Plan.***

As of and subject to the occurrence of the Confirmation Date: (i) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (ii) the Debtors and each of their respective managers, directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

**10.9    *Exemption from Certain Transfer Taxes.***

Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange (or deemed issuance, transfer or exchange) of a security, including, without limitation, the Hotel Equity, (b) the creation of any mortgage, deed of trust, Lien, pledge or other security interest, or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan (including, without limitation, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation, dissolution, deeds, bills of sale and transfers of tangible property) will not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders) or other similar taxes. Unless the Bankruptcy Court orders otherwise, all sales, transfers and assignments of owned and leased property approved by the Bankruptcy Court on or prior to the Effective Date shall be deemed to have been in furtherance of or in connection with the Plan.

23

### 10.10 *Section 1145 Exemption.*

Pursuant to section 1145(a) of the Bankruptcy Code, neither section 5 of the Securities Act of 1933 nor any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, shall apply with respect to any security being offered, sold or transferred under this Plan, including without limitation to the equity interests in Hotel Owner or the equity interests in Venture LLC.

### 10.11 *Corporate Action.*

(a)     Upon the Effective Date, all matters provided herein that would otherwise require approval of the stockholders, members, managers or directors of the Debtors, including, without limitation, (i) the execution and entry into, and performance under, the Settlement Agreement and all documents and agreements in connection therewith, (ii) the transfer or distribution of the interests in Venture LLC, (iii) the Sale and (iv) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date) shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation or limited liability company law of the states in which the Debtors are incorporated, without any requirement of further action by the stockholders or directors of the Debtors.

(b)     On or (as applicable) prior to the Effective Date, the appropriate officers, agents or representatives of the Debtors (including, any authorized member, manager, vice-president, president, chief executive officer, treasurer or chief financial officer of any Debtor), as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors, including any agreements, instruments and documents in connection with the Settlement Agreement. The authorizations and approvals contemplated by this Section shall be effective notwithstanding any requirements under nonbankruptcy law.

### 10.12 *Termination of Subordination Rights and Settlement of Related Claims.*

The classification and manner of satisfying all Claims and Equity Interests under the Plan take into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise. All subordination rights that a holder of a Claim or Equity Interest may have with respect to any distribution to be made pursuant to the Plan will be discharged and terminated and all actions related to the enforcement of such subordination rights will be permanently enjoined. Accordingly, distributions pursuant to the Plan to holders of Allowed Claims will not be subject to payment to a beneficiary of such terminated subordination rights or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights; provided, however, that nothing contained herein shall preclude any Person or entity from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases and other agreements or documents delivered under or in connection with the Plan.

24

### 10.13 *Compromise and Settlement.*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, including, without limitation, the Settlement Agreement, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Equity Interests.

## SECTION 11. **RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a) to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b) to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c) to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d) to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

(e) to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is party or with respect to which any Debtor may be liable, including, without limitation, any matter relating to the terms and conditions of any such executory contract or unexpired lease as assumed or assigned, or the obligation of any party to perform thereunder, and to hear, determine, and if necessary, liquidate any Claims arising therefrom;

(f) to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g) to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement for this chapter 11 Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing, provided that, notwithstanding the foregoing, any forum selection provisions in such agreements, instruments, or other documents shall be respected;

(k)     to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(l)     to hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code;

(m)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)     to enter a final decree closing the Chapter 11 Cases;

(q)     to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(r)     to recover all assets of the Debtors and property of the Debtors' estates, wherever located; and

(s)     to hear and determine any rights, Claims, or causes of action held by or accruing to the Debtors pursuant to the Confirmation Order, the Bankruptcy Code or any federal statute or legal theory.

26

SECTION 12. **MISCELLANEOUS PROVISIONS**

### 12.1 *Payment of Statutory Fees.*

On the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

### 12.2 *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.3 *Amendments.*

(a) **Plan Modifications.** The Plan may be amended, modified, or supplemented by the Debtors, with the reasonable consent of DekaBank, Host and USRHC, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, with the reasonable consent of DekaBank, Host and USRHC, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b) **Other Amendments.** Subject to the terms of the Settlement Agreement, prior to the Effective Date, the Debtors, with the reasonable consent of DekaBank, Host and USRHC, may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court.

### 12.4 *Effectuating Documents and Further Transactions.*

Each of the officers, managers and members of the Debtors is authorized, in accordance with their respective authority under the resolutions of the applicable board of directors, managers or members or under the organizational documents of the Debtors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 12.5 *Revocation, Withdrawal, or Non-Consummation of the Plan.*

Subject to the terms of the Settlement Agreement, the Debtors reserve the right, with the reasonable consent of DekaBank, Host and USRHC, to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file other plans. If the Debtors revoke or withdraw the Plan, or if Confirmation Order is not entered or consummation of the Plan does not occur, then (i) the Plan shall automatically be deemed withdrawn and null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (iii) nothing contained in the Plan, and no acts taken in preparation

27

for consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

### 12.6 *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, with the reasonable consent of DekaBank, Host and USRHC, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms. No alteration or interpretation of the Plan pursuant to this section shall operate to modify or amend the terms and conditions of the Settlement Agreement without the consent of the Settlement Agreement Parties in their sole discretion.

### 12.7 *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 12.8 *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.9 *Binding Effect.*

The Plan shall be binding on and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and each of their respective successors and assigns, and all other parties-in-interest in the Chapter 11 Cases.

### 12.10 *Conflicts.*

In the event that the provisions of the Disclosure Statement and the provisions of the Plan conflict, the terms of the Plan shall govern.

PAC 974484v.1

**12.11** *Notices.*

All notices, requests, or demands to or on the Debtors shall be (i) in writing, (ii) served by certified mail (return receipt requested), hand delivery, overnight delivery service, first class mail, or facsimile transmission, and, (iii) unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

For the Debtors:

POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
Attn:   Steven M. Yoder, Esq.
        Jeremy W. Ryan, Esq.
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192

For LEM:

Jay Eisner
2929 Arch Street
Philadelphia, PA 19104-2868
Telephone:  (215) 972-3322
Facsimile:  (215) 557-9606

-and-

ALLEN & OVERY LLP
Kevin J. O'Shea, Esq.
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 610-6454
Facsimile:  (212) 610-6399

29

For DekaBank:

DEKABANK DEUTSCHE GIROZENTRALE
Mainzer Landstraße 16
60325 Frankfurt am Main
Germany
Attention: Burkhard Mau
Facsimile: +49 (0) 69 71 47 - 28 75

-and-

SONNENSCHEIN, NATH & ROSENTHAL LLP
Two World Financial Center
New York, New York 10281, USA
Attention: Gary A. Goodman, Esq.
Facsimile: (212) 768-6800

For USRHC:

ISTITHMAR WORLD
The Galleries
Building 4, Level 6
Downtown Jebel Ali
PO Box 17000
Dubai
United Arab Emirates
Attn: Andy Watson
Facsimile: +971 4 390 3258

-and-

ISTITHMAR WORLD
The Galleries
Building 4, Level 6
Downtown Jebel Ali
PO Box 17000
Dubai
United Arab Emirates
Attn: Nick Hornung
Facsimile: +971 4 361 2680

-and-

PAUL HASTINGS JANOFSKY & WALKER LLP
515 South Flower Street
25th Floor
Los Angeles, CA 90071
Attn: Rick S. Kirkbride, Esq.
Facsimile: (213) 996-3261

30

For Host:

        HOST HOTELS & RESORTS, L.P.
        6903 Rockledge Drive
        Suite 1500
        Bethesda, MD 20817
        Attn:  David L. Buckley, Esq.
        Telephone:
        Facsimile:  (240) 744-5305

            - and -

        ARNOLD & PORTER LLP
        555 Twelfth Street, NW
        Washington, D.C. 20004-1206
        Attn:  Michael D. Goodwin, Esq.
              Michael J. Canning, Esq.
        Telephone:  (202) 942-5000
        Facsimile:  (202) 942-5999

PAC 974484v.1

Dated: July 14, 2010

Respectfully submitted,

**HOTELS UNION SQUARE MEZZ 1 LLC**

By: _____
Name:
Title:


**HOTELS UNION SQUARE MEZZ 2 LLC**

By: _____
Name:
Title: