IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re:<br><br>HOTELS UNION SQUARE MEZZ 1 LLC<br>and<br>HOTELS UNION SQUARE MEZZ 2 LLC,<br><br>Debtors. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Chapter 11<br><br>Case No. 10-10971 (KJC)<br>(Jointly Administered)<br><br>Re: Docket No. 118<br><br>**Hearing Date: August 27, 2010 at 10:00 a.m.**<br>**Objection Deadline: August 23, 2010 (by agreement)** |

## OBJECTION TO JOINT PLAN OF LIQUIDATION OF HOTELS UNION SQUARE MEZZ 1 LLC AND HOTELS UNION SQUARE MEZZ 2 LLC

LNR Partners, Inc., as special servicer for WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-C5 (the "Senior Mortgage Lender"), by and through undersigned counsel, hereby files this Objection (the "Objection") to the Joint Plan of Liquidation of Hotels Union Square Mezz 1 LLC and Hotels Union Square Mezz 2 LLC Under Chapter 11 of the Bankruptcy Code [Docket No. 118] (the "Plan").[1] In support hereof, the Senior Mortgage Lender respectfully submits as follows:

### INTRODUCTION

The Senior Mortgage Lender is the holder of a loan to Hotel Owner in the original principal amount of $115 million, secured by a first priority perfected mortgage against the Hotel

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such terms as set forth in the Plan.

{340.007-W0009265.}

(the "Senior Mortgage Loan").[2] Hotel Owner, the borrower on the Senior Mortgage Loan, is not a debtor in these Chapter 11 Cases. As a result, since the filing of these Chapter 11 Cases, the Senior Mortgage Lender has patiently sat on the sideline, observing how the 3-party dispute among LEM, DekaBank and Istithmar Guarantor regarding the proper ownership of the mezzanine interests in Hotel Owner would play out. Indeed, the Senior Mortgage Lender had no reason to take any action in these cases prior to filing this Objection because, among other reasons, (a) it and the Court were told repeatedly by the Debtors that they did not intend to take any action in the Chapter 11 Cases that would impair the Senior Mortgage Loan and (b) the payment defaults under the Mezz 1 Loan Documents, Mezz 2 Loan Documents and Mezz 3 Loan Documents did not trigger a cross-default under the Senior Mortgage Loan Documents.

Both prior to and since the commencement of the Chapter 11 Cases, the Senior Mortgage Lender has been in constant contact with the Debtors, the lenders holding the Mezz 1 Loan and Mezz 2 Loan and their respective counsel and other professionals. In good faith, since early June 2010, the Senior Mortgage Lender has attempted to reach agreement with those parties regarding the granting of its consent to the agreements embodied by the Settlement Agreement and the Plan. Indeed, the Senior Mortgage Lender provided a comprehensive draft Consent Agreement to the parties over two weeks ago, detailing the proposed accommodations requested by the Debtors and the framework for the Senior Mortgage Lender's consent as required by the Settlement Agreement. Unfortunately, the Debtors (and other parties to the Settlement Agreement) have rejected the terms of the proposed Consent Agreement.

---

[2] All documents evidencing and/or securing the Senior Mortgage Loan are referred to as the "Senior Loan Documents", and include, without limitation, the following documents: (a) Promissory Note, (b) Mortgage, Assignment of Rents and Leases and Security Agreement, (c) Assignment of Leases and Rents, (d) Amended and Restated Loan Agreement and (e) Guaranty Agreement from Istithmar Guarantor.

Through the Plan, the Debtors seek to implement an orderly liquidation, effectuated by the Settlement Agreement, which will result in the ownership of the Hotel being transferred to Venture LLC. Despite the repeated assurances to the contrary, the Plan and Settlement Agreement, if approved, clearly negatively impact the Senior Mortgage Loan and run afoul of the Senior Mortgage Loan Documents, which is why the Debtors and other parties initially sought the Senior Mortgage Lender's consent.[3] Accordingly, the Senior Mortgage Lender objects to the Plan to the extent that it seeks to approve transactions respecting the Hotel Owner and the Senior Mortgage Loan that require the consent of the Senior Mortgage Lender or that otherwise impair its rights under the Senior Loan Documents.

## BACKGROUND

1. On October 4, 2006, the Senior Mortgage Loan was extended to Hotel Owner, secured by a first priority security interest in and mortgage against the Hotel. As additional security for the Senior Mortgage Loan, Istithmar Guarantor issued that certain Guaranty Agreement dated as of October 4, 2006 (the "Istithmar Guaranty"), in favor of Column Financial, Inc. (the "Original Lender").[4]

2. In early 2010, LEM initiated a lawsuit against Istithmar Guarantor,[5] alleging that certain funds held in the FF&E reserve account were misappropriated and misapplied by USRHC (its affiliate) and that such conduct, in addition to the filing of the Chapter 11 Cases,

---

[3] At a recent hearing in the Chapter 11 Cases, the Debtors sought the Court's approval to file the Settlement Agreement under seal and the Court took such request under advisement. The Debtors previously provided the Senior Mortgage Lender with an executed copy of the Settlement Agreement. It is our understanding that all of the parties-in-interest in the Chapter 11 Cases, including the Office of the United States Trustee, has an executed copy of the Settlement Agreement. Accordingly, in order to maintain the *status quo* of the confidential nature of the Settlement Agreement until the Court issues its ruling on the Debtors' request, the Senior Mortgage Lender will refer generally to provisions within the Settlement Agreement and provide specific citations to relevant section references.

[4] Subsequent to the extension of the Loan by the Original Lender, the Loan was transferred into a securitization trust and the Loan is now held by the Senior Mortgage Lender.

[5] The action was filed Southern District of New York (Case No. 10-CIV-1625 (RJS)).

triggered obligations under certain guarantees issued in favor of LEM. The misappropriation of such reserve funds is also a default under the Istithmar Guaranty and the Senior Mortgage Loan Documents. However, despite the knowledge of such misappropriation, neither the Debtors nor Istithmar Guarantor were forthcoming with the details regarding the improper use. Only recently, the Senior Mortgage Lender was apprised of the facts and circumstances regarding the inappropriate use of such funds.

3. Accordingly, on the date hereof, the Senior Mortgage Lender issued a notice of default to the Hotel Owner due to the misappropriation of approximately $3.1 million of deposits held in a FF&E reserve account. Rather than holding the reserves in accordance with the Senior Loan Documents for necessary and critical improvements, the former owner of the Hotel, USRHC improperly utilized $3.1 million to pay debt service. The shortfall should have been funded by the ultimate owner of the Hotel instead of depleting bargained-for contractually mandated reserves the Senior Mortgage Lender is entitled to. The depleted reserves have not been replenished.

## OBJECTIONS

### A. Required Consents and Impairment of Senior Loan Documents

4. Under section 4.5 of the Settlement Agreement, the parties thereto[6] agreed to use commercially reasonable efforts to obtain the approvals and consents of the Senior Mortgage Lender necessary to consummate the transactions described in the Settlement Agreement. *A fortiori*, because the Settlement Agreement is being implemented via the Plan, the Plan cannot authorize transactions that are not permitted under the Senior Loan Documents without the consent of the Senior Mortgage Lender.

---

[6] Section 1.65 of the Plan lists the parties to the Settlement Agreement, including Istithmar Guarantor.

5. Included among the Senior Mortgage Lender consents requested and required under section 4.5 of the Settlement Agreement are the following: (a) the termination and release of the Istithmar Guaranty;[7] (b) approval of a master lease structure to be proposed by Host;[8] and (c) delivery of an estoppel certificate in a form requested by the parties to the Settlement Agreement rather than the form required under the Senior Loan Documents.[9]

6. As a result of a failure to reach consensus on the form of the Consent Agreement, the Senior Mortgage Lender objects to any and all provisions of the Plan and Settlement Agreement that require the Senior Mortgage Lender's consent, including the enumerated provisions referenced above, or that otherwise impair the Senior Mortgage Lender's rights under the Senior Loan Documents.

7. Moreover, under the Settlement Agreement, the parties thereto have requested that the Senior Mortgage Lender provide an estoppel certificate that exceeds the requirements under the Senior Loan Documents. The Debtors cannot force the Senior Mortgage Lender to modify or abridge the Senior Loan Documents without its consent. Accordingly, the Senior Mortgage Lender remains willing to deliver the estoppel certificate provided for under the Senior Loan Documents, but not in the form requested by the Debtors and other parties to the Settlement Agreement.

B. **Expansion of Discharge and Improper Releases**

8. Pursuant to section 1141(d) of the Bankruptcy Code, a debtor does not receive a discharge of its debts in the event of a "liquidation of all or substantially all of the property of the estate." Id. at §1141(d). Under the Plan, as of the Effective Date, each of the Debtors will be deemed to have been liquidated. See Plan, §5.4(a). Accordingly, neither Debtor is entitled to a

---

[7] See Settlement Agreement, §4.5.2(i).
[8] Id., §4.5.2(ii)

discharge of its debts under section 1141 of the Bankruptcy Code and the Confirmation Order should explicitly provide that neither Debtor is obtaining a discharge under section 1141 of the Bankruptcy Code.

9. In addition, pursuant to section 524(e) of the Bankruptcy Code, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." See 11 U.S.C. §524(e). Accordingly, *assuming arguendo* that there was a discharge available to the Debtors, no third party may claim that it received any form of discharge or release of its liability on account of such debts. See 11 U.S.C. §524(e).

10. Section 10.2 of the Plan seeks an impermissibly broad discharge under section 1141 of the Bankruptcy Code and the concomitant effect of a discharge under section 524 of the Bankruptcy Code. Section 10.5 also seeks to implement broad releases in favor of the Debtors and the other parties to the Settlement Agreement.

11. To the extent that either the Istithmar Guarantor or the Debtors assert, or seek to assert, that by virtue of confirmation of the Plan, the Istithmar Guarantor is somehow released or discharged from its obligations under the Istithmar Guaranty, such assertion clearly is wrong and the Confirmation Order should expressly provide that the Plan in no way impacts the claims of third parties under the Istithmar Guaranty.[10]

## CONCLUSION

WHEREFORE, the Senior Mortgage Lender respectfully requests that the Court deny the approval of the Plan to the extent that it seeks approval of terms and conditions not permitted under the Senior Loan Documents and further relief as the Court deems just and appropriate.

---

[9] Id., §4.5.3
[10] Of course, the parties to the Settlement Agreement are free to contractually agree to release the Istithmar Guarantor from any claims they may have under the Istithmar Guaranty. However, that agreement cannot be forced upon the Senior Mortgage Lender.

Dated: August 23, 2010

        BILZIN SUMBERG BAENA
        PRICE & AXELROD LLP
        Jay M. Sakalo (<u>Pro</u> <u>Hac</u> <u>Vice</u> pending)
        2500 Wachovia Financial Center
        200 South Biscayne Boulevard
        Miami, Florida 33131-2336
        Telephone: (305) 374-7593

        - and -

        LANDIS RATH & COBB LLP

        */s/ William E. Chipman, Jr.*
        William E. Chipman, Jr. (No. 3818)
        919 Market Street, Suite 1800
        P.O. BOX 2087
        Wilmington, Delaware 19899
        Telephone: (302) 467-4400

        Counsel for LNR Partners, Inc., as special servicer for WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-C5